HENRY WHITE and JOHN P. CROSBY, executors of William Bostwick, deceased, *vs.* WILLIAM J. HOWARD and others.

A testator, who was a widower, domiciled in New Haven, Connecticut, died there in April, 1863, leaving a will, and leaving one child (Frances) his heir at law and next of kin, and personal property, real estate in New Haven, and real estate in New York. The plaintiffs were appointed executors. The will was proved as a will of real and personal estate, in New York and in Connecticut, and letters testamentary issued in each state.

After directing his debts and certain pecuniary legacies to be paid, the testator, by the seventh article of the will, gave all the residue of his estate, real and personal, to his executors "as joint tenants in fee simple," upon trust to receive the rents, issues and profits thereof, and until his child, Frances, was twenty-one years of age, to pay to C. her guardian therein named, so much of such rents, income, &c. as should be proper or necessary for her support, maintenance and education, and after she was twenty-one years of age, to pay her the whole of the net proceeds of the rents, income, &c. if she desired it, quarterly or semi-annually, during life; the balance thereof not paid over to her, to be invested "quarterly, semi-annually, or oftener, at the discretion of the trustees, in real estate, or in loans on good and undoubted security, or in undoubted first class bonds, or in state stocks of the New England states, or of the state of New York, or in undoubted first class stocks; all of said real estate, loans, bonds and stocks to be those located in the New England states, or in the state of New York; and when so invested to be added to, and form a part of the principal of said trust fund or property."

In the event of the death of Frances, the seventh article of the will directed as follows: "But if my said child, Frances, die, with no husband, or child, or issue of any child, surviving her, then the whole of said trust fund and property shall be disposed of as follows, viz. $2000 to the New Haven Orphan Asylum; $5000 to the American Sunday School Union in Philadelphia; $5000 to the Society for the Promotion of Collegiate and Theological Education at the West; $10,000 to the American Bible Society; and then whatever remains of said trust fund or property shall be divided equally between the following six societies, namely: The American Tract Society in New York; the Southern Aid Society; the American and Foreign Christian Union; the American Colonization Society; the Trustees of the Board of Domestic Missions of the General Assembly of the Presbyterian Church in the United States of America," and the Board of Foreign Missions, of the same assembly.

By the 8th article of the will, the testator appointed C. of New York, guardian of Frances, committing to her the "care, supervision and control of her person, maintenance and education," until she was twenty-one years of age.

White *v.* Howard.

By the 9th article, the testator directed whatever income of the trust fund or property might remain in the hands of the trustees, after paying to the guardian whatever might be necessary for the support, education and maintenance of his child until she was twenty-one, or, after she was twenty-one, whatever might remain of the net income, after paying over to her such part of the net income *as she might desire,* to be invested by her trustees, in their discretion, "in real estate, or in loans on bond and mortgage, or in loans on good and undoubted security, or in undoubted first class bonds, or in state stocks of the New England states or the state of New York, or in undoubted first class stocks; all of said real estate, loans, bonds and stocks to be those in the New England states or in the state of New York, and, when so invested, shall be added to, and form a part of the principal of said trust fund or property."

By the 10th article, in the first instance, the *trustees,* "who may hold any real estate *in the state of Connecticut,* or any personal estate in the state of Connecticut or elsewhere," under the will, were expressly authorized to sell the same, or any part thereof, and to invest the avails, at their discretion, substantially as any surplus income, during the life of his daughter had been directed to be invested ; and then the *executors* were expressly authorized to sell any real estate *in the state of Connecticut,* or any personal estate in Connecticut, or elsewhere, "*before distribution shall be made of said estate,*" and to invest the avails, substantially, as any surplus income during the life of his daughter, had been directed to be invested.

There was not in the 10th article, nor in any other part of the will, any express power or authority given to the trustees or executors to sell any real estate situate in New York.

By the 13th article of the will, if any one of the societies named in the will was not incorporated, the estate given to such society was to be "*conveyed, transferred* and paid *in fee simple* and forever to the person who, when the estate was to be *conveyed, transferred* and paid according to the will shall act as treasurer of the said society, to be appropriated to the charitable uses and purposes of the said society and under its direction;" and this article of the will was to apply to each of the societies not incorporated.

At the time of the testator's death, his daughter, Frances, was about fifteen years of age. C. her guardian, took her to New York, to live with her, and she continued under C.'s charge and care, until her death, unmarried, in August, 1865, at about the age of sixteen years and eleven months, which occurred at Litchfield, Connecticut, where she was at school.

The executors and trustees, up to July 1, 1866, had taken about $47,000 of the surplus income of the trust property, (the largest portion of which came from the real estate in New York,) and about $51,500 of the avails of the sales of personal property, and invested it in real estate in New York, in their names as executors or trustees. About $63,000 of the amount so invested by them was paid after the death of Frances, but was paid in pursuance of contracts made before her death.

White *v.* Howard.

The executors had paid all the debts of the testator, and all the pecuniary legacies payable before the death of the daughter, except the legacy of $1000 to the Southern Aid Society, and all the legacies payable out of the trust fund or property, on the death of the daughter, in the event which happened, except the legacy of $5000 to the Society for the Promotion of Collegiate and Theological Education at the West.

*Held* 1. That the doctrine or principle of equitable conversion could not be applied to the real estate in New York, there being no direction in the will to the executors or trustees to sell it, and nothing on the face of the will which would justify the court in implying a power to sell such real estate, for distribution or any other purpose.

2. That the domicil of the testator being at New Haven, his personal property, not having any locality, was all, wherever it was, or however invested, subject to the laws of Connecticut. And that it was for the courts of that state, or the proper tribunal there, as to the personalty, to construe the will; to pass upon the validity or invalidity of the testamentary dispositions of such property; and to declare the succession or rights of succession to it, under the will or otherwise; and as to such personal property, the letters testamentary granted in New York must be deemed ancillary to the letters granted in Connecticut.

3. That by the laws of New York and (as assumed) by the laws of Connecticut, all the personal property of the testator which did not pass under his will, went to his next of kin, viz. his only child, Frances.

4. And that assuming that the domicil of Frances, at the time of her death, was in New York, it was to be presumed that the courts of Connecticut would hold that the succession or right of succession, on her death, to the undisposed of personalty, must be according to the law of New York.

5. That if the domicil of the daughter at the time of her death, was in New York, it followed that letters of administration upon her estate granted by the probate court in Connecticut, must be regarded as ancillary to any letters which might be granted by the proper probate court of this state; and that the foreign administrator was not a proper party to an action here, for the construction of the will; certainly not for any affirmative relief.

6. That as to the real estate in New York, the laws of New York controlled its testamentary disposition, and the succession or right of succession to it. That it was, therefore, for the courts of New York, as to such real estate, to construe the will, and to pass upon and determine the validity or invalidity of the testamentary dispositions of it, according to the laws of that state, and to declare the succession, or right of succession to it, by the laws of New York, under the will or otherwise.

7. That the gift, by the last clause of the 7th article of the will, in the event which happened, of the residue of the trust fund or property, after the payment of pecuniary legacies amounting to $22,000, to the American Tract Society in New York and five other charitable societies or bodies, must be regarded as a gift to them as tenants in common, and not as joint tenants;

White *v.* Howard.

and that it was in effect a gift to each of said societies or bodies, by name, of one sixth of said residue. In other words, that the shares of the residue intended for one or more of the societies that could not take, could not be taken, under the will or otherwise, by the societies that could take.

8. That the Southern Aid Society could not take one sixth of the real estate in New York, because neither at the death of the testator, nor when his daughter died, at which time the gift was to take effect in possession, or when the right to the one sixth must have vested in it, if it ever was to vest in it, was the society incorporated. It was a mere voluntary association of individuals, under the name of the Southern Aid Society, and was not capable of being a grantee or devisee by that name. And its subsequent incorporation, in 1866, could not enable it to take; for the right to the one sixth could not remain in abeyance and suspended, waiting for the act of incorporation, but vested somewhere, on the death of the daughter.

9. That the treasurer of the Southern Aid Society could not take the one sixth which by the 13th article of the will, in case either of the societies was unincorporated, was directed to be conveyed and transferred to the treasurer of such society; such gift being invalid uuder the decision in *Bascom* v. *Albertsen*, (34 *N. Y. Rep.* 584.)

10. That the American Tract Society could not take one sixth of the trust real estate in New York, because, though a New York corporation, it was not authorized by its charter, or by any law of this state, to take by devise, either when the testator, or his daughter, died. And that the act of 1866, authorizing it to take by devise, did not affect the question of its capacity to take in this case.

11. That neither the trustees of the Board of Domestic Missions, &c. nor the American Colonization Society, could take the one sixth of the trust real estate in New York, intended for it; because they were both foreign charitable corporations, (the first being a Pennsylvania corporation and the other a Maryland corporation,) and neither of them had ever been authorizod by any law of this state to *take* real estate in it by devise.

12. That assuming that, being authorized by their respective charters to take by devise generally, either of those corporations, as between it and the state, or the authority of the state creating it, has power by its charter to take by devise, anywhere, in or out of the state creating it; yet that neither could take one sixth of the trust real estate in question.

13. That the Board of Foreign Missions of the Presbyterian Church, &c. under its charter, passed April 12, 1862, which declared that the corporators and their associates, by their corporate name, should be "capable of taking by purchase, holding, conveying, &c. any real or personal estate for the purposes of said corporation; but which estate within this state shall not at any time exceed the annual income of $20,000," could take, and was entitled to, under the will, one sixth of the trust real estate in New York; it not appearing by the proofs that the annual income of the corporation's present prop-

erty, increased by the probable annual income of such one sixth, would probably exceed $20,000.

14. That the American and Foreign Christian Union could take one sixth of the trust real estate in the city of New York; it not appearing, satisfactorily, from the pleadings and proofs, that if it should be permitted to take one sixth of the entire trust property, real and personal, the clear annual income of such one sixth would probably exceed the sum of $10,000, the limitation in section 6 of the act of 1848, under which such corporation was formed.

15. That neither the proviso in section 6 of the act of 1848, nor the act of April 13, 1860, applied to this case, or to the will, or to either of the charitable societies or bodies, as to any question in this case.

16. That the heirs at law of the testator's daughter were entitled to the four sixths of the trust real estate in New York, intended, on her death, in the event which happened, for the four charitable societies or bodies which could not take.

17. That the trust for the life of the daughter was authorized and valid as to the whole of the trust real estate; and, it vested in the trustees the whole estate, legal and equitable, for the life of the daughter. And that the trustees did not take, and could not take, any other or larger estate, in any part or portion of the trust real estate.

18. That the estate or interest of the testator, in the trust real estate in New York, which did not pass to the trustees, under the will, on his death descended to his daughter, as his sole heir at law, subject to the valid trust and trust estate for her life, and to the contingent testamentary dispositions of it, on and after her death.

19. That the domicil of the testator's daughter, at the time of her decease, must be deemed to have been in New York.

ACTION for the construction of the will of William Bostwick, deceased.

*D. Lord, J. P. Crosby* and *P. W. Ostrander,* for the plaintiffs.

*Geo. C. Genet* and *John H. Reynolds,* for the defendants, the heirs at law and next of kin of the testator.

*De Witt Clinton Jones* and *Walter F. Jones,* for the defendant, Henry D. White, administrator, &c. of Frances Howard Bostwick, deceased, daughter of the testator.

*Geo. N. Titus,* for the defendant, the American Tract Society.

*John W. Edmonds,* for the defendants, the American and Foreign Christian Union, and the American Colonization Society.

*Tompkins Westervelt,* for the defendant, the Foreign Board of Missions, and the defendant, the Trustees of the Board of Domestic Missions.

*Alfred L. Edwards,* for the defendants, the Southern Aid Society, and Lucius Hopkins, treasurer of said society.

*A. R. Rodgers* and *Charles F. Sanford,* for the defendants, the heirs at law and next of kin of Frances Howard Bostwick, the daughter of the testator.

SUTHERLAND, J. This may be said to be an action for the construction of the will of William Bostwick, late of New Haven, deceased, and to have the succession, or the right of succession to his property, real and personal, under his will, or otherwise, judicially declared, in view of events since his death.

The testator, a widower, domiciled in New Haven, died there, April 10, 1863, leaving a will dated May 23, 1860, and leaving one child, a daughter, Frances Howard Bostwick, his heir at law and next of kin, and leaving personal property of about the value of $122,000, real estate in New Haven of about the value of $33,000, and real estate in the city of New York of the then value, or about the value of $172,000. By the will and codicil the plaintiffs were appointed executors. The will was proved as a will of real and personal estate, in New York, May 18, 1863, and in Connecticut, June 16, 1863, and letters testamentary issued in each state.

After directing his debts to be paid, and after giving and directing the payment of certain pecuniary legacies to the amount of about $10,200, the testator, by the seventh

article of the will, gives all the residue of his estate, real and personal, to his executors, " as joint tenants in fee simple," upon trust, to receive the rents, issues and profits thereof, and, until his child, Frances Howard Bostwick, is twenty-one years of age, to pay to her guardian, Mrs. Christie, (named in the eighth article of the will,) so much of such rents, income, &c. as should be proper and necessary for the support, maintenance and education of his said child, and after she was twenty-one years of age, to pay her the whole of the net proceeds of the rents, income, &c. if she desired it, quarterly or semi-annually, during her natural life; the balance thereof not paid over to her, to be invested "quarterly, semi-annually, or oftener, at the discretion of the trustees, in real estate, or in loans, on good and undoubted security, or in undoubted first class bonds, or in state stocks of the New England states, or of the state of New York, or in undoubted first class stocks; all of said real estate, loans, bonds and stocks to be those located in the New England states, or in the state of New York; and when so invested to be added to and form a part of the principal of said trust fund or property." Then follow certain provisions and directions as to the disposition of the trust property upon the death of the testator's child, if she married, and left a husband and children, or issue of children, or if she left a husband and no children nor issue of children, or if she left children or issue of children, but no husband; which provisions and directions, as she died without ever having been married, and without children or issue of children, or husband, it is not important to state or refer to more specially.

In the event which happened, the disposition of the trust property and residue, by the last clause of the seventh article of the will is as follows: "But if my said child, Frances, die, with no husband, or child, or issue of any child, surviving her, then the whole of said trust fund and property shall be disposed of as follows, namely: Two

thousand dollars to the New Haven Orphan Asylum; five thousand dollars to the American Sunday School Union in Philadelphia; five thousand dollars to the Society for the Promotion of Collegiate and Theological Education at the West; ten thousand dollars to the American Bible Society, and then whatever remains of said trust fund or property shall be divided equally between the following six societies, namely: the American Tract Society in New York; the Southern Aid Society; the American and Foreign Christian Union; the American Colonization Society; the Trustees of the Board of Domestic Missions of the General Assembly of the Presbyterian Church in the United States of America," and the Board of Foreign Missions of the same Assembly.

By the eighth article of the will, the testator appoints Mrs. Frances F. Chrystie of New York, guardian of his child, committing to Mrs. Chrystie "the care, supervision and control of the person, maintenance and education" of his said child, until she is twenty-one years of age; and if Mrs. Chrystie should die or resign her guardianship before his child arrives at the age of twenty-one years, he appoints Mrs. Crosby, of New York, such guardian.

By the ninth article of the will, the testator directs whatever income of the trust fund or property may remain in the hands of the trustees after paying to the guardian whatever may be necessary for the support, maintenance and education of his child until she is twenty-one, or after she is twenty-one, whatever may remain of the net income, after paying over to her such part of the net income *as she may desire*, to be invested by her trustees, in their discretion, "in real estate, or in loans on bond and mortgage, or in loans on good and undoubted security, or in undoubted first class bonds, or in state stocks of the New England states or the state of New York, or in undoubted first class stocks; all of said real estate, loans, bonds and stocks to be those in the New England States, or in the

state of New York, and, when so invested, shall be added to and form a part of the principal of said trust fund or property."

By the tenth article, in the first instance, the *trustees* "who may hold any real estate *in the state of Connecticut,* or any personal estate in the state of Connecticut, or elsewhere," under the will, are expressly authorized to sell the same, or any part thereof, and to invest the avails, at their discretion, substantially as any surplus income, during the life of his daughter, had been directed to be invested, and then the *executors* are expressly authorized to sell any real estate *in the state of Connecticut,* or any personal estate in Connecticut, or elsewhere, " *before distribution shall be made of such estate,*" and to invest the avails, substantially, as any surplus income during the life of his daughter had. been directed to be invested. There is not in the tenth article, nor in any other part of the will, any express power or authority given to the trustees or executors to sell any real estate situate in the state of New York.

By the thirteenth article of the will, if any one of the societies named in the will is not incorporated, the estate given by the will to such society is to be " conveyed, transferred and paid in fee simple and forever to the person who, when the estate is to be conveyed, transferred and paid according to this will, shall act as treasurer of the said society, to be appropriated to the charitable uses and purposes of the said society and under its direction;" and this article of the will was to apply to each of the societies not incorporated.

The testator's daughter, when her father died, was about fifteen years of age. On his death, Mrs. Chrystie, named in the will as her guardian, took her to New York to live with her; she lived in Mrs. Chrystie's family in New York for some time, and continued under Mrs. Chrystie's charge and care until her death, the 30th of August, 1855, at about the age of sixteen years and eleven months, at Litchfield,

Connecticut, where she had been taken and left at school by Mrs. Chrystie, for her health.

The parties defendants, are :

1st. The heirs at law of the testator's daughter.

2d. The admistrator, &c. of the daughter, appointed by the court of probate for the district of New Haven, in Connecticut.

3d. The six charitable societies or bodies between which, by the seventh article of the will, whatever of the trust fund or property remaining after paying certain pecuniary legacies to four other charitable societies or bodies was to be equally divided, if the testator's daughter died, leaving no husband or child, or issue of any child surviving her, and Lucius Hopkins, as treasurer of the Southern Aid Society, one of the said six societies or bodies.

4th. The heirs at law and next of kin of the testator *on or after* the death of his daughter.

The executors and trustees, up to July 1, 1866, had taken about $47,000 of the surplus income of the trust property, (the largest portion of which came from the real estate in New York,) and about $51,500 of the avails of the sales of personal property, and invested it in real estate in New York, in their names as executors or trustees. About $63,000 of the amount so invested by them was paid after the death of the testator's daughter, but was paid in pursuance of contracts made before her death.

I understand that the executors have paid all the debts of the testator, and all the pecuniary legacies payable before the death of the daughter, except the legacy of $1000 to the Southern Aid Society, and all the legacies payable out of the trust fund or property, on the death of the daughter, in the event which happened, except the legacy of $5000 to the Society for the Promotion of Collegiate and Theological Education at the West.

This is the case. I proceed to examine and pass upon

such questions presented by it as I think, under the circumstances, it is for the courts of this state to pass upon.

*First.* In my opinion, the doctrine or principle of equitable conversion, cannot be applied to the real estate of New York.

There is in the will no direction to the executors as executors, or as trustees, to sell the trust real estate in New York. There is no express power given them to sell *the real estate in New York,* and in my opinion there is nothing on the face of the will which would justify the court in implying a power to sell it, for distribution, or any other purpose.

By the 9th article of the will the trustees are carefully authorized to invest any surplus income during the life of the daughter in real estate in New York; and by the 10th article they are twice authorized, first as trustees, and then as executors, to sell and dispose of " any real estate in the state of Connecticut, or any personal estate in the state of Connecticut, or elsewhere," and invest the avails, at their discretion, in real estate in New York.

The 10th article is carefully worded, and it would seem that the testator purposely omitted to authorize the trustees to sell the real estate in New York, either that which he should have there at the time of his death, or that which the trustees might acquire there, under the authority to invest the avails of the real estate in Connecticut and of the personal estate, in real estate there.

The authority by the second clause of the tenth article, to sell "before the distribution of such estate," and the limitation of such authority in words, to the real estate in Connecticut, and the personal estate there or elsewhere, appears to me to exclude the idea that the testator intended the real estate in New York to be sold, for distribution or any other purpose.

White *v.* Howard.

The testator probably thought particularly well of investments in real estate in New York.

By the thirteenth article of the will the estate given to a society not incorporated, is to be "*conveyed, transferred,* and paid, in *fee simple* to the treasurer of the society."

The words "given and paid," used by the testator in giving, or directing the transfer, of three parts of the trust fund or property, if the daughter died leaving husband and children, and of the whole trust fund or property if she died leaving children but no husband, to such child or children, &c. as she should by her will direct, appear to me to be quite appropriate to the gift or transfer of a mixed fund or property, consisting of real and personal property.

*Second.* The domicil of the testator was, at, and for many years previous to, his death, New Haven, Connecticut. The personal property of the testator must be deemed to have had no locality. It was all, wherever it was, or however invested, subject to the laws of Connecticut, in which state the testator died domiciled. It is for the courts of Connecticut, or the proper tribunal there, as to the personalty, to construe the will, to pass upon the validity or invalidity of the testamentary dispositions of it, and to declare the succession or rights of succession to it, under the will or otherwise, and as to it, the letters testamentary granted in New York must be deemed ancillary to the letters testamentary granted in Connecticut. (*Parsons* v. *Lyman,* 20 *N. Y. Rep.* 103. *Redfield on Wills,* pt. 1, *ch.* 9, § 2, *et seq. Story's Conflict of Laws,* § 468.)

By the laws of New York, and I assume by the laws of Connecticut, all the personal property of the testator which did not pass under his will, went to his next of kin. His daughter was his next of kin and only child and heir at law. For reasons to be stated hereafter, I think the domicil of the testator's daughter, at the time of her

death, was in New York, and I presume the courts of Connecticut will so hold. Therefore, I presume, that the same courts will hold, that the succession or right of succession, on the death of the testator's daughter, to the undisposed of personalty, must be according to the law of New York.

It is probable that the succession would be the same, whether the domicil of the daughter at the time of her death was in Connecticut or New York; but it might not be. If the domicil of the daughter was in New York; it follows too, that the letters of administration granted to the defendant, White, by the probate court in Connecticut, must be regarded as ancillary to any letters of administration which may be granted by the proper probate court of this state ; and it also follows, that the defendant White as a foreign administrator, is not, and cannot be a proper party to this suit, certainly not for any affirmative relief.

*Third.* As to the real estate in New York, the laws of New York control its testamentary disposition and the succession or right of succession to it. (*Hosford* v. *Nichols*, 1 *Paige*, 226. *Story's Conflict of Laws*, § 424, *and note* § 428, *p.* 702, § 445.)

It seems, that the principle of *lex rei sitæ* as to real estate, applies to local laws limiting the power or capacity of disposing of by will, under certain circumstances, to one half, one third or one quarter of the testator's property or real estate. (*Story's Conflict of Laws*, § 445.) It is for the courts of New York, therefore, as to the real estate in New York, to construe the will, and to pass upon and determine the validity or invalidity of the testamentary dispositions of it, according to the laws of this state, and to declare the succession or the right of succession to it, by the laws of New York, under the will or otherwise. And probably, on the settlement of the decree in this case, if not before, it will be necessary for the court, in view of the circum-

stances of the case, and especially of the fact of the large investments of the surplus income and avails of sales of personal property, since the death of the testator, in real estate in New York, to determine whether such real estate is to be deemed real or personal property, or to what extent the one or the other, for purposes of the decree.

*Fourth.* It is plain, I think, that the gift by the last clause of the seventh article of the will, in the event which happened, of the residue of the trust fund or property, after the payment of pecuniary legacies, in the aggregate amounting to $22,000, to the American Tract Society in New York and five other charitable societies or bodies, must be regarded as a gift to them as tenants in common, and not as joint tenants; and that it is in effect a gift to each of said societies or bodies, by name, of one sixth of said residue. In other words, I think it is plain, that the shares of the residue intended for one or more of the societies that cannot take, cannot be taken, under the will or otherwise, by the societies that can take. (*Floyd* v. *Barker*, 1 *Paige*, 480. *Beekman* v. *Bonsor*, 23 *N. Y. Rep.* 312. *Downing* v. *Marshall*, *Id.* 366. *Skrymsher* v. *Northcote*, 1 *Swanst.* 572. *Bagwell* v. *Dry*, 1 *P. Wms.* 701. *Page* v. *Page*, 2 *id.* 489.) The gift of the residue is not to them as a class, by a name descriptive of the class, but it is a gift to them by the name of each. The testator never intended to give any one of these societies more than one sixth of the residue. He never intended to give any one or more of them the residue of a residue.

*Fifth.* As to the capacity of each of these six charitable societies or bodies, to take the one sixth of the residue intended for it, in the event which happened, and incidentally of the capacity of the testator to make this testamentary disposition of the residue, in view of certain New York statutes, *as to the real estate in New York.*

Not following the order in which the societies are mentioned in the will, I will say:

1st. That the Southern Aid Society cannot take one sixth of the real estate in New York, because, neither at the death of the testator, nor when his daughter died, when the gift was to take effect in possession, or when the right to the one sixth must ·have vested in it, if it ever was to vest in it, was the society incorporated. It was a merely voluntary association of individuals, under the name of the Southern Aid Society, and was not capable of being a grantee or devisee by that name. Its subsequent incorporation in 1866, could not enable it to take; for the right to one sixth could not remain in abeyance and suspended, waiting for the act of incorporation. The right to the one sixth must have vested somewhere, on the death of the daughter. (*Owens* v. *The Missionary Society,* 14 *N. Y. Rep.* 384.) I assume that the purpose of the society was charitable, and if it could have taken, it would have taken, on a charitable trust and for charitable use. It is not necessary to consider the effect of the resolution in the spring of 1861, set out in its answer, suspending its operations. It seems, that notwithstanding the resolution, its treasurer and other officers remained in office. I shall assume, that the defendant, Lucius Hopkins, as treasurer, could take the one sixth, as the successor of the treasurer in office when the testator's daughter died, if the gift by the thirteenth article of the will to the treasurer of an unincorporated society is valid. I understand the Court of Appeals of this state to have decided, in the late case of *Bascom* v. *Albertson,* (34 *N. Y. Rep.* 584,) a gift to an individual trustee, or to individual trustees, for an indefinite charitable use or purpose, to be void; if a gift of real estate, void by the provisions of the Revised Statutes, in relation to uses and trusts and perpetuities; if a gift of personalty, void by the provisions of the Revised Statutes, in relation to perpetuities. The court, in that case, expressly overruled the case of *Williams* v. *Williams,* (4 *Seld.* 525,) so far as it sustained the gift to

individual trustees, for the education of the poor, at the academy, in the village of Huntington.

2d. The American Tract Society cannot take one-sixth of the trust real estate in New York, because, though a New York corporation, it was not authorized by its charter, or by any law of this state, to take by devise, either when the testator or his daughter died. The act of the legislature, passed in 1866, authorizing it to take by devise, does not affect the question of its capacity to take in this case, for the reasons before stated in speaking of the capacity of the Southern Aid Society to take.

3d. In my opinion, neither the Trustees of the Board of Domestic Missions, &c. nor the American Colonization Society, can take the one-sixth of the trust real estate in New York, intended for it, because they are both foreign charitable corporations, (the first being a Pennsylvania corporation and the other a Maryland corporation,) and neither of them has ever been authorized by any law of this state to *take* real estate in it, by devise. I assume, being authorized by their respective charters to take by devise generally, that either corporation, as between it and, the state, or the authorities of the state creating it, has power by its charter to take by devise, anywhere in or out of the state creating it, (though as to this point there may be considerable doubt;) but conceding, for the purpose of this case, that both corporations have in this qualified sense, power by their respective charters to take by devise in this state, yet I think neither can take one-sixth of the trust real estate in question. (1.) Because the statute of this state relating to wills of real property, declares the general policy of the state to be, that corporations cannot and shall not take by devise. By the statute, no valid devise, can be made to a corporation, " unless such corporation be expressly authorized by its charter, or by statute, to take by devise." (2 *R. S.* 57, § 3.) The meaning of the provision is, that no devise to

a corporation shall be valid, unless such corporation be expressly authorized by its charter, granted or confirmed by this state, or by a statute of this state, to take by devise. It was the purpose of the provision to declare the general policy, that corporations should not take by devise, not to declare that corporations which were authorized by their charters or by special statutes to take by devise, could take by devise. The latter construction would be absurd. The provision shows the general policy against corporations taking by devise, as plainly as if it did not contain the exception, for the exception would have been implied, had it not been expressed. Of course, the principle of comity between states has never been carried so far as to require this state to permit another state to control, or to create, or authorize exceptions to a general rule of policy of this state. (*Bank of Augusta* v. *Earle,* 13 *Peters,* 519. *Runnyan* v. *Costa's Lessee,* 14 *id.* 122. *Bard* v. *Poole,* 2 *Kern.* 495.) (2.) I do not see how I can hold, that these foreign corporations can take, in view of the decision of the Court of Appeals in *Bascom* v. *Albertson,* before referred to. They are charitable corporations, and if they take, they must take as trustees, and in trust, for the charitable use of indefinite beneficiaries. I understand the Court of Appeals, in *Bascom* v. *Albertson,* to have held, that as to real estate such trusts were abolished, and in effect prohibited, by the provisions of the Revised Statutes, relating to trusts of real estate, and that they were also within the provisions of the Revised Statutes, relating to perpetuities. Certainly, these corporations cannot take lands in this state, upon, or for, a trust void, and in effect prohibited by the laws of this state. Certainly, a law of this state cannot be dispensed with, by another state, or by the authority of another state. I understand the result of the decision in *Bascom* v. *Albertson* to be, that neither real nor personal property can be taken upon trusts for charitable uses, where the *cestuis que trust,* or

beneficiaries, are so indefinite, that the use cannot be executed, unless by the express authority *of the legislature of this state,* in effect dispensing with the provisions of the Revised Statutes relating to uses, and trusts and perpetuities.

4th. By an act of the legislature of this state, passed April 12, 1862, Walter Lówrie and certain other citizens of the state, and such others as they might associate with them, were constituted a corporation by the name of the Board of Foreign Missions of the Presbyterian church in the United States of America. The proofs show, that there was at the time an existing corporation, composed of the same corporators, and of the same corporate name, formed in 1852, under the general act for the incorporation of benevolent, charitable, scientific and missionary societies. (*Laws of* 1848, *ch.* 319.) The act of April 12, 1862, on its face, does not refer to the corporation formed under the general act of 1848. The proofs show that the charter given by the act of 1862, was accepted. I am of the opinion that this acceptance must be deemed to have operated either as a surrender of the charter under the general act of 1848, or as a merger of the old corporation in the new; therefore, I am of the opinion that the capacity of this corporation to take one sixth of the trust real estate in New York must be exclusively tested by the act of 1862, which provides that the corporators and their associates, by their corporate name, should be " capable of taking by purchase, holding, conveying, or otherwise disposing of, any real or personal estate for the purposes of said corporation; *but which estate within this state shall not at any time exceed the annual income of twenty thousand dollars.*" The construction and application of this legislative check or restriction upon the capacity of taking, &c. in this case, under its peculiar circumstances, is certainly not free from doubts and difficulties; but the proofs do not satisfy me, if this corporation should be permitted to

take and hold, for the purposes of the corporation, one sixth of the whole trust fund or property, real and personal, that the annual income of the property it now holds, increased by the probable annual income of the one sixth of the whole trust fund or property so taken under this will, would probably exceed twenty thousand dollars; and I shall therefore hold, that this corporation can take, and is entitled to, under the will, one sixth of the trust real estate in New York, in question.

5th. The American and Foreign Christian Union is a corporation under the general act of 1848, before referred to, formed in 1861. By section 2 of the act of 1848, it has capacity to take by *purchase,* and hold real estate for the purposes of its incorporation, to an amount not exceeding fifty thousand dollars in value, and personal estate, to an amount not exceeding seventy-five thousand dollars in value; but the section provides, that the clear annual income of such real and personal estate shall not exceed the sum of ten thousand dollars. By section 6 of the act, it has capacity to take and hold any real or personal property "by virtue of any *devise* or bequest contained in *any* last will or testament of any person whatsoever, *the clear annual* income of which devise or bequest shall not exceed the sum of ten thousand dollars; but immediately follows this proviso: "No person leaving a wife or child or parent, shall devise or bequeath to such institution or corporation more than one fourth of his or her estate, after the payment of his or her debts, and such devise or bequest shall be valid to the extent of such one fourth, and no such devise or bequest shall be valid, in any will, which shall not have been made and executed at least two months before the death of the testator." An act of this state, relating to wills, passed April 13, 1860, (*Laws of* 1860, *p.* 504,) provides that, "No person having a husband, wife, child or parent, shall by his or her last will and testament devise or bequeath to any benevolent, charitable, literary,

scientific, religious or missionary society, association or corporation, in trust, or otherwise, more than *one half* part of his or her estate, after the payment of his or her debts, (and such devise or bequest shall be valid to the extent of one half, and no more.)   This act expressly repeals all laws and parts of laws inconsistent with it.

I am of the opinion, that it is not necessary to determine, in this case, whether the act of 1860, does or does not relieve the American and Foreign Christian Union from the proviso of the 6th section of the act of 1848, and subject it to the act of 1860; or, in other words, whether the act of 1860, did or did not enlarge the capacity of the testator to devise to this corporation; for I am of opinion, that the contingent gift or devise to this corporation is not within the intent or purview, either of the proviso of the 6th section of the act of 1848, or of the act of 1860.   I think that neither the proviso nor act of 1860, applies to this case, or to the will in this case, or to either of the charitable societies or bodies, *as to any question in this case.*   The will of the testator was not executed *in extremis*, but nearly three years before his death.   He left neither wife nor parent, but he did leave a child.   This child and her children, and their issue, if she married and had children, were the first and most careful objects of his bounty.   He carefully provides for her support and education out of the income of the whole residue and great bulk of his estate, during her minority, and for accumulation of the surplus during her minority primarily and principally for her benefit and the benefit of her children and their issue; gives her, at her option, after she arrives at the age of twenty-one, the entire income of the residue, with its accumulations, and upon her death, leaving children or issue of children, gives the entire corpus of the residue to them as she might by will direct, except, that if she left a husband, he was to have, during his life, the income of one fourth part; but on his

death, this fourth part was to go to her children or their issue surviving the husband, as she by will might direct.

None of the societies or charitable bodies mentioned in the seventh article of the will, were to have any portion of the residue until the testator's child died, and not upon or after her death if she married and left children, except, if she also left a husband, the one fourth, retained under the trust for his use during his life, was, in the event of no child or issue of a child of hers surviving him, to go under the contingent charitable dispositions of the will.

It is presumed, that the purpose of the proviso in the act of 1848 and the act of 1860, was to protect, to some extent, parents, wives and children, from testamentary dispositions to charitable or religious institutions or corporations, made *in extremis*, and probably, or possibly, under the influence of a pious enthusiasm, increased by physical infirmity, or the fear of an eternal accountability. In this case the testator did not think of charity, until he had carefully secured his child and her children and husband the benefit of nearly the whole of his large estate.

I regard the limitation of the capacity of taking, &c. in section 2, of the act of 1848, as a limitation of the capacity to take, or acquire by *purchase*, and the limitation of the capacity of taking, in section sixth of that act, as a limitation of the capacity to take by devise or bequest by or under *any one's* last will; and as I am not satisfied from the pleadings and proofs in this case, if the American and Foreign and Christian Union should be permitted to take one sixth of the entire trust property, real and personal, that the clear annual income of the one sixth of it would probably exceed the sum of $10,000, the limitation in section 6, of the act of 1848, under which this corporation was formed, I shall hold, that it can take one sixth of the trust real estate in New York.

*Sixth.* I think the heirs at law of the testator's daughter are entitled to the four sixths of the trust real estate in

New York, intended, on her death, in the event which happened, for the four charitable societies or bodies, which cannot take. It appears to me impossible, in view of the provisions of the Revised Statutes relating to uses and trusts, to say, that the trustees took an estate in fee in the trust real estate, though the gift of the residue was, in words, to them, as joint tenants in fee simple, and though the testator probably intended or expected that they would make formal conveyances or transfers of the trust property on the vesting of the contingent limitations or dispositions of it.

The defendants, who became the heirs at law of the testator, on or by the death of his daughter, cannot take the four sixths, except as a reverting or resulting trust, and on the theory that the trustees took all of the estate of the testator in the real estate left by him and given to them.

The trust was authorized and valid for the purpose of receiving the rents and profits during the life of the testator's daughter, and applying or paying them as directed.

The direction for an accumulation of the surplus income during the minority of the daughter, was valid. If the direction to accumulate so much of the income after she was twenty-one, as she should not ask for, or desire to be paid to her, should be viewed as an illegal and void direction for accumulation, that would not affect the validity of the trust to receive the rents, &c. during her life.

The contingent trust of one fourth part of the trust residue for the husband during his life, never took effect, nor did either of the contingent limitations or gifts over of this one fourth on his death.

It is not necessary, therefore, to pay any attention to the suggestion, that this contingent trust for the benefit of the husband, of the fourth part, and the contingent limitations or gifts over of *it* on the death of the husband, were void in their creation, on the ground that the daugh-

ter might have married some one not in being at the death of the testator, and therefore that both the contingent trust and the contingent limitation over, of the fourth part, if valid, might have suspended the absolute power of alienation, beyond, or otherwise than, during two lives in being at the death of the testator.

It is of no importance in this case, in the event which happened, whether this contingent trust of the fourth part, or the contingent limitations over of it on the death of the husband, were, or were not, either or all, void in their creation.

The trust *for the life of the daughter* was authorized and valid as to the whole of the trust real estate, and it vested in the trustees the whole estate, legal and equitable, for the life of the daughter. (1 *R. S.* 728, § 55, *subd.* 3; *id.* 729, § 60.)

The trustees in this case did not take, and could not take, any other or larger estate, in any part or portion of the trust real estate. A trust to sell or to convey lands, except for the benefit of creditors or *legatees*, or to satisfy some charge thereon, may be valid as a power in trust, but is not valid as a trust calling for, or requiring any estate or interest in the trustee. (1 *Rev. Stat.* 728, § 55; 729, §§ 58, 60.) A trust to sell lands for distribution among *devisees* may be valid as a power in trust, but is not valid as a trust calling for an estate or interest in the trustee. (*Lang* v. *Ropke*, 5 *Sandf.* 363.) By the Revised Statutes, an authorized express trust of real estate, gives the trustee an estate, legal and equitable, sufficient for the purposes of the trust, but no other or larger estate. A trust for preserving contingent remainders, is not authorized or required by the Revised Statutes.

The estate or interest of the testator, in the trust real estate in New York, which did not pass to the trustees, under the will, on his death descended to his daughter, as

his sole heir at law, subject to the valid trust and trust estate for her life.

The testamentary dispositions of it at her death were all contingent, and it therefore could not vest on the death of the testator, by or under any or either of them. It vested somewhere. It did not remain in abeyance. The result must have been that it went to and vested in the daughter, subject to the trust and the trust life estate, and the contingent testamentary dispositions of it on and after her death. It did not and could not result or revert, on her death, to those who *then* became the heirs at law of the testator, as an unexecuted trust or trust estate, which had passed, under the will, to the trustees, for I have shown that the Revised Statutes did not permit it to pass under the will to the trustees.

The contingent dispositions by the will, on or after the death of the daughter, of the trust fund or property, cannot be regarded as contingent gifts, or limitations of it, *subject to the trust,* but as contingent gifts or limitations of it, to take effect in possession, if they ever vested or took effect in possession, at the *termination* of the trusts.

On the death of his daughter, in the event which happened, the testator intended the trust real estate in New York to go to six charitable societies or bodies, each to take one sixth of it, but four of them not being capable of taking when she died, I think the four sixths went to *her* heirs at law.

*Seventh.* Considering the large investments in real estate in New York, by the trustees, by express authority of the will, since the death of the testator, for purposes, some of which, and only some of which, have failed, the question as to what shall be deemed real estate, as between the heirs at law of the daughter and the societies that can take, especially in view of the circumstance that the administration of the trust personal property, *under the*

*will,* belongs to the courts or authorities of Connecticut, is an important one, and not, as I before intimated, free from difficulties. This question is not at all discussed in the briefs submitted, and I therefore reserve it until the settlement of the decree. The general rule relating to the point, with a reference to many cases, will be found in Mr. Cox's note 1, to *Cruse* v. *Barby,* (3 *P. Wms.* 21.)

*Eighth.* I think the determination of the question as to the domicil of the testator's daughter at the time of her death, does not depend upon the determination of any question as to her power, while a minor and a ward, or the power of her guardian to choose or create a new or another domicil. It is manifest, from the will, that her father expected and intended that she should, upon and after his death, during her minority, reside in New York, under the care and protection of her guardian residing there. It is evident that her father intended, by his will, upon and after his death, to change her domicil from Connecticut to New York. Upon his death, Mrs. Christie, her testamentary guardian, took her and brought her to New York, in pursuance of her father's will. There is not a circumstance to show that her father ever expected her to return to Connecticut. He appointed for her a guardian living here, and the larger part of his property put in the hands of trustees, for her use, was here. The will was proved here, and I have no doubt that the courts of this state can, without violating any principle of state comity, or local law, recognize the testamentary guardianship under the circumstances, though the testator's will was made in Connecticut, and he died domiciled there, as changing the domicil of his daughter to New York. Of course, the circumstance that the daughter died at Litchfield, in Connecticut, under the circumstances under which she went there, and was left there, is of no importance on the question as to her domicil at the time of her death.

There must be a decree according to this opinion.

The findings of fact, &c. and the decree, will be drawn by the attorney for the plaintiffs, and settled on five days' notice.

The question of costs is reserved until the settlement of the decree.

[NEW YORK SPECIAL TERM, April 6, 1868.   *Sutherland,* Justice.]