## WILLETS *v.* WILLETS.

### *N. Y. Court of Appeals ; October,* 1886.

[Reversing 35 *Hun*, 401.]

*Wills ; construction.*] One of the clauses of the testator's will was as follows: " I do give and bequeath to my son [name], my friends [names], and my nephews [names], and my son-in-law [name], the survivors and survivor of them, the sum of $100,000, relying upon them to dispose of the same for the benefit of such charitable and benevolent and educational purposes as they shall judge will most promote the comfort and improve the condition of the poor ; or in case any of my descendents should become poor and needy, then to apply in whole or in part to such descendents." In an action to determine the validity of this clause,—*Held*, 1. That it was invalid ; that the gift is to the persons named to take jointly, the money to be applied in their discretion to the uses and purposes mentioned, and creates an unauthorized trust.

2. That the words " survivors or survivor " do not refer to the date of the testator's death.

Appeal from a judgment of the general term of the first department which reversed a judgment of the special term.

The action was brought by Robert Willets and others, as executors of the will of Samuel Willets, deceased, against Sarah A. Willets and others, for the construction of the will, and the determination of the validity of a clause (designated as the ninth) which was as follows:

"I do give and bequeath to [here he named seven persons, relatives or friends] the survivors and survivor of them, the sum of one hundred thousand dollars, relying upon them to dispose of the same for the benefit of such charitable and benevolent and educational purposes as they shall judge will most promote the comfort and improve the condition of the poor, or, in case any of my descendants should become poor and needy, then to apply, in whole or in part, to such descendants."

There was a residuary gift of the executors in trust for grandchildren, etc.

The action was tried before Hon. GEORGE P. ANDREWS at a special term of the supreme court, held in the first judicial district, who rendered an opinion, given below, holding the bequest invalid.

*The general term* reversed the judgment and upheld the validity of the bequest, being of opinion that this was an absolute gift to the persons named, free from all legal trusts and conditions, that it operated as a valid, effective bequest of the amount named to them individually ; and that the words "survivors and survivor" related solely to the death of the testator (Reported in 35 *Hun*, 401).

From the judgment of the general term the defendants appealed to the court of appeals, which reversed the judgment of the general term and affirmed the judgment of the special term on the following opinion of GEORGE P. AN-DREWS, J., in the court below.

GEORGE P. ANDREWS, J.—[After disposing of some minor questions.]—With regard to the ninth bequest I am unable to concur in the views of the counsel for the executors, and of legatees named in the provision of the will therein referred to. As was said by the court in reference to a similar provision in a will: " It is an attempt to create a trust not authorized by the laws of this State " (Lefevre *v.* Lefevre, 2 *Supm. Ct. Rep.* [*T. & C.*] p. 341).

It seems to me that the intention of the testator is clear.

He leaves $100,000 to the seven persons named, who are to take and hold the money, not severally, but jointly, and apply it in their discretion to the uses and purposes mentioned. The money, or such part of it as shall not be so applied during the lives of all seven, is to go to the survivors, and, if any shall remain so long unapplied, to the sole survivor.

It is true that it has been frequently decided that expressions in a will, importing recommendation, hope, confidence and desire, do not raise a trust. The numerous cases to this effect are collected in Leading Cases in Equity, Vol. 2, pp. 1833-1866. It will be found, however, upon examination, that all these cases are of a class different from that to which the one under consideration belongs. They are cases in which it was entirely clear that the testator intended that the devisees or legatees named in the will should receive the property to their own use, accompanied by recommendations or suggestions that some provisions should, afterwards, in the discretion of the devisee or legatee, be made for some other person or persons. In many cases the testator merely intimates how it would be agreeable to him to have the property disposed of upon the death of the devisee or legatee. In many others the property is given absolutely to the devisee or legatee, with a suggestion, or hint, that something should be given to other relatives or friends of the testator.

In the present case it is apparent the testator did not intend to bequeath the $100,000 to the seven persons named,

for their own use, but to make them the medium through which the $100,000 should be distributed to others.

The words "survivors or survivor" do not refer to the date of the testator's death.

Where a devise or bequest is made to several persons absolutely, those words do often refer to the date of the testator's death, and of course indicate that the property devised or bequeathed is to go to the persons or person who survives the testator. They cannot be so construed in the present case. Aside from the evident intent to make provision for the benefit of the poor, or for his descendants who might at some remote period become poor and needy, it is hardly possible that the testator, who was well advanced in years when his will was executed, should have thought it possible that all the seven but one might die before him, or have deemed it necessary to provide for that contingency by bequeathing the money to the "survivor," if that word had reference to his own decease.

The invalidity of provisions of the kind in question is well established (Levy v. Levy, 33 *N. Y.* 97; Bascom v. Albertson, 34 *Id.* 584; Lefevre v. Lefevre, 2 *Supm. Ct. Rep.* [*T. & C.*] 330; Matter of Abbott, 3 *Redf.* 303). And I am of opinion that the bequest is invalid, and that the $100,000 must go to and form part of the residuary estate.

All of the court of appeals judges concurred, except RAPALLO, J., dissenting, and MILLER, J., not voting.

Judgment accordingly.

### NOTE ON DRAFTING CHARITABLE BEQUESTS.

The increasing importance, in the drafting of wills, of the principles most frequently now invoked to defeat charitable bequests, renders a comparison of some clauses recently passed upon a matter of practical interest.

The cases here stated illustrate, in connection with the two cases in the text, the test of validity; and also the form of clauses, now adopted with increasing frequency, for the purpose of effectuating the intent of the testator in an indirect or approximate way, if the event should prove that the legatee intended could not legally enforce a claim.

Note on Drafting Charitable Bequests.

I. *Cases on validity of charitable bequests.*

In Norris *v.* Thomson's Exrs., 19 *N. J. Eq.* 307, the bequest involving this question was at follows:

"And I further direct, that if the income from my estate, after the payment of the bequests hereinbefore made, shall exceed the sum of $10,000 a year, the surplus be invested in good securities, and that my said wife, Josephine, shall be authorized and empowered by her last will and testament, *to give and devise the same among such benevolent, religious or charitable institutions as she may think proper.*"

Suit was an amicable one. The widow and other legatees being advised this power of appointment to charity, etc., etc., was void, or at least of doubtful validity, and desiring to terminate a trust which would be long and troublesome, agreed among themselves as to the division of the property, executing an agreement by which the widow relinquished this power, and agreed not to exercise it. This agreement was approved by act of legislature. The executor not being satisfied with this authority refused to pay over the trust fund. Hence this suit.

Power of appointment was held by court to be void because vague and indefinite ; and the act of Legislature was held constitutional and valid.

In commenting on the foregoing case, the New York court of appeals (in Power *v.* Cassidy, 79 *N. Y.* 602, 611; s. c., 35 *Am. R.* 550, with note; aff'g 16 *Hun,* 294, 301, which aff'd *Id.* 294, 296) say : "It will be observed that no class of institutions were designated, and the chancellor decides that as the power was to give to any of the three, and as 'benevolent' institutions were more indefinite and of a wider range than 'charitable or religious' institutions, and would include all gifts prompted by good will or kind feeling towards the recipient, whether the object of charity or not, the devise was void. The case supports the position that a designation of a class of benevolent institutions would have rendered it valid."

The bequest in Power *v.* Cassidy thus sustained, was in the following language :

"And the balance I give to my executors, to be divided by them among such Roman Catholic charities, institutions, schools or churches in the city of New York, as a majority of my executrix and executors shall decide, and in such proportion as they may think proper."

It was in evidence that at the time of the execution of the will and of testator's death, there were numerous incorporated Roman Catholic benevolent institutions, charities, churches and schools in the city of New York, which, under the provisions of their several charters, were

authorized to take, by devise or bequest, both real and personal estate, and that a portion of these were designated by a majority of the executrix and executors named in the will.

In the Matter of Hagenmeyer's Will, 12 *Abb. N. C.* 432, the following provisions were both held valid, " *Third.* I further ordain and direct my executors, hereinafter named, to pay or take from my money the amount of one hundred dollars, for the purpose that masses shall be read for my poor soul."

" *Sixth.* After the foregoing bequests are paid and discharged by my executors, all the rest, residue and remainder of my estate, real and personal, of any nature and kind, I give, devise, and bequeath to the Roman Catholic church of the Most Holy Trinity, in Montrose avenue, Brooklyn, E. D., for the purpose that some masses shall be said for my poor soul, and for other charity institutions as the pastor of said church sees fit."

In Prichard *v.* Thompson, 29 *Hun*, 295, there was a bequest to executors " Upon trust to distribute the said sum of $150,000 among such incorporated societies, organized under the laws of the State of New York or the State of Maryland, having lawful authority to receive and hold funds upon permanent trusts for charitable or educational uses as my said executors, the survivors or survivor of them, shall select for that purpose, and in such several sums, not exceeding in any case the amount that such incorporated body is empowered by law to take and hold upon the uses aforesaid, as they, my executors, the survivors or survivor of them, shall determine."

The supreme court in an opinion by DANIELS, J., say: " This paragraph of the testator's will was not incapable of being executed by reason of the discretion committed by it to the executors in the selection of the societies to participate in the distribution of the estate. That there were such incorporated societies organized under the laws of this State, and also under the laws of the State of Maryland, having authority to receive and hold funds upon permanent trusts for charitable and educational uses, and from which a suitable and proper selection could be made for the distribution of this portion of the estate of the testator, was found as a fact in the case. The objects generally intended to be benefited were capable of being selected under the exercise of the authority vested by the will in the executors, and that they were given this general power of selection does not appear to be inconsistent with any principle of law applicable to such a disposition." Citing Power *v.* Cassidy, 16 *Hun*, 294 ; s. c., aff'd 79 *N. Y.* 602, adding: "the fact that the power of selection in the present case was so extended as to include the incorporated socie-

ties of this State, or of the State of Maryland, having lawful authority to receive and hold funds upon permanent trusts for charitable or educational uses, will not so distinguish this case from that which was then decided as to require the application of any different principle to its disposition. Whether the executors should be limited in their power of selection to a certain class of institutions of a city, or to another class in the entire State, will not change the application of the principle. That which would include the former would apparently be equally efficient in its comprehension of the latter."

In Graham v. Alden (*Supreme Court, 1st District, Sp. T., Nov.* 1880, not heretofore reported) the following bequest was sustained :

"I do hereby give, devise and bequeath, to the trustees of the Parochial Fund of the Prot. Epis. Church in the diocese of New York, the sum of thirty thousand dollars, to be safely invested on bond and mortgage of real estate in the city of New York, at seven per cent. interest, payable half-yearly, for the benefit of those Episcopal ministers whose salaries are inadequate to their support, so that the income which is derived from said investment shall be sub-divided into seven equal parts or portions of three hundred dollars each, one portion of which shall be given to each minister whose salary does not exceed five hundred dollars per annum, to have and enjoy the same agreeably to the intent and meaning of said fund devoted to clerical support."

LAWRENCE, J., said: The bequest to the trustees of the Parochial Fund of the Protestant Episcopal Church in the diocese of New York I do not regard as void either on the ground of vagueness or uncertainty.

The stipulation finally entered into between the parties to the effect that there are at least seven clergymen officiating as rectors of incorporated parishes in the " diocese of New York " whose salaries as paid or agreed to be paid by their vestries are less than $500, relieves me from the necessity of any particular examination of the testimony as to that fact. The stipulation also obviates the objection that there is any uncertainty about the class for whose benefit the bequest is made, and if the bequest is fairly within the object and purposes of the act incorporating the trustees of the Parochial Fund of the Protestant Episcopal Church, the case is brought within the well settled rule, that where the fund is given to a trustee competent to take, and where the charitable use is so far defined as to be capable of being specifically executed by the authority of the court, the trust will be upheld (see Owens v. Missionary Society, &c., 14 *N. Y.* 380, 408 ; Power v. Cassidy, 16 *Hun,*

294, and cases cited; also, Power v. Cassidy, 79 *N. Y.* 602, and cases cited).

Upon examining the acts of 1860, chap. 376, p. 641, and the act of 1867, chap. 495, p. 1283, I am of the opinion that the bequest is one which it was within the power of the testator to make, and of the trustees of the Parochial Fund to receive. The 4th section of the act of 1860, as amended by the act of 1867, provides that : " the said trustees are hereby authorized to receive and hold, by grant, gift, devise or will, for the creation and accumulation of said fund, real and personal estate to such an amount that the annual income arising there-from shall not exceed thirty thousand dollars."

It is then provided that the said fund shall be devoted in part to the assistance and support of the officiating members of the said church engaged in parochial duty within the said diocese, and that this portion of the fund shall be called "fund for clerical support," and in part in the purchase of glebes, and the erection of parsonages, within the limits of organized parishes, in said diocese, in communion with the said church, which shall be called "fund for parsonage aid." By a subsequent clause it is declared that all donors to the fund, by gift or devise, may specify whether the same is to be appropriated for " clerical support " or for " parsonage aid," and a separate account shall be kept of the portions of the fund devoted to these purposes.

[The learned judge here quoted the bequest at length.]

It is quite clear to me that the testator intended to limit his bounty to ministers of the Protestant Episcopal Church within the diocese of New York, and that the language of the will bears naturally that construction. He must be supposed to have known that under the statute the funds over which the trustees had control were to be devoted to the assistance and support " of officiating ministers of the said church, engaged in parochial duty within the said diocese."

When, therefore, he says, in making the bequest, that it is for the benefit of those episcopal ministers whose salaries are inadequate for their support, etc., he must be held to have reference to those ministers to whom the statute incorporating the trustees refers, and no others. Furthermore the will directs that the ministers who are to receive the income are to have and enjoy the same " agreeably to the intent and meaning of said fund devoted to clerical support."

The criticism that the bequest is void, either for uncertainty in its object or as to the class of clergymen for whose benefit it is to be devoted, I think, is entirely answered by a simple reading of this language. I am, therefore, of the opinion that the bequest is one which the testator was authorized to make, and the trustees to receive. The question was also raised as to the effect of the clause as to the interest

at seven per cent., etc.   On this point the learned judge said : The
fund cannot be increased to enable the trustees to raise an income of
twenty-one hundred dollars per annum.   The trustees will receive the
sum of thirty thousand dollars and invest it for the purposes of the
trust in the manner directed by the testator, obtaining therefrom the
best rate of interest in their power.

The grounds of his decision on this point were stated as follows, in
disposing of the same question where it arose under another bequest :

It probably never occurred to the testator, when he directed his
executors to invest the sum of $10,000 on bond and mortgage upon
good property in the city of New York at seven per cent., for the pur-
pose of paying an annuity  or yearly income of $700 to Mrs. Alden, that
the legal rate of interest might be lowered by the Legislature, or the
value of money might be so depreciated that it would become impossi-
ble for the executors to obtain $700 annually from such an investment.

And yet I am of the opinion that considering the bequest over,
which is to take effect upon the death of Mrs. Alden, it cannot justly
be held that the testator intended that she should have a yearly income
of $700, irrespective of the principal sum which would be required to
produce that amount.

The principal sum which is directed to be invested to produce the
income of $700, by the terms of the will, at the demise of Mrs. Alden,
is given and bequeathed in " equal divisions " to the American Bible
Society in the city of New York and the Domestic Missions.

If the amount directed by this clause of the will to be invested by
the executors can be increased for the purpose of raising the income of
$700 annually, then the bequest over to the two societies must be pro-
portionately increased, for it is quite evident that that sum which is to
give to Mrs. Alden the aforesaid income is the sum which is to be
divided between the two societies.   Such a result would, in my opin-
ion, be at variance with the whole scope and tenor of the testator's
will.   Suppose that by some extraordinary change in the value of
money by the action of the Legislature in lowering the rate of interest
it should become impossible for the executors to obtain more than one
per cent. per annum, could it be contended that the fund which was
designated by the testator himself as the source from which the in-
come was to proceed could be increased from $10,000 to $70,000.
When it is remembered that the bequest to James F. Burrill is pre-
cisely similar in its language to the bequest to Mrs. Alden, save and
except as to the names of the institutions between whom the principal
fund is to be divided upon his death, it must, I think, be readily seen
that such a contention cannot be sustained.   In the event supposed,
the court would be called upon to say that the testator's executors

would be authorized to invest an aggregate sum of $140,000 to produce an aggregate income of $1,400, when by his will he had directed but $20,000 to be invested. Again, if it be true that the testator intended that Mrs. Alden and Mr. Burrill should each have an absolute annual income of $700, neither more nor less, and irrespective of the question whether the sum of $10,000 would produce that amount annually, then the result would also follow that in the event of the Legislature having increased the rate of interest to 10 per cent., and of the ability of the executors to obtain that rate, there would be a surplus income of $300 annually on each investment, to which neither of the annuitants would be entitled. It probably would hardly be contended by counsel that if the $10,000 when invested should produce more than $700 annually the annuitants could not claim the increased income, and yet that position must be taken if the specification in the will of the sum which the investment was expected to produce is to be regarded as absolute and final.

To my mind the fair, plain meaning of the will is this—that the testator intended his executors to invest the sum of ten thousand dollars for each of the parties named, in the manner indicated by him, expecting that from such investment each party would annually receive the sum of $700. He did not contemplate on the one hand that the value of money would be materially decreased, nor on the other that it would be increased. But he gave to each the lawful annual increment of $10,000, invested by his executors as he had directed. I do not regard the case of Craig v. Craig (3 Barb. Ch. p. 76) as aiding in the solution of this question, for the reason that in that case the will directed the executors to invest in bonds and mortgages, etc., a sum of money sufficient to produce, in legal interest, at least $500 per annum. In that case no specific sum to be invested was named, and the difficulty which arises in this case was therefore avoided (see opinion of the Chancellor at p. 90).

This case seems to me to be more analogous in principle to the cases of Earle v. Bellingham (24 Beav. 445); Baker v. Baker (6 H. of L. Cas. 616); Foster v. Smith (1 Phillips, 629); and Gee v. Mahood, L. R., 9 Ch. D. p. 151), in which cases it was in substance held that where the specific provision made in the will, for the raising of the annuity, had failed to produce the required sum, the corpus of the estate could not be resorted to to supply the deficiency.

As to this question, see also, Delaney v. Van Aulen, 84 N. Y. 16; s. c., 2 Am. Probate, 337; rev'g 21 Hun, 274.

A gift expressed to be to an institution to be denominated and known by a specified name, "to aid and assist the destitute poor and

needy in the City of New York, if such an institution can be founded or put into operation . . . within five years after the decease of my husband," to whom interest on the fund was given for his life, may be sustained, if such an institution be incorporated with power to take, before testator's death. Kearney v. Missionary Society of St. Paul, 10 *Abb. N. C.* 274.

As to whether such a bequest, or a gift over in case it failed could be sustained if the institution were not incorporated then, see Cruikshank v. Home for the Friendless, 18 *Abb. N. C.* 282 (aff'd on this opinion at general term, 45 *Hun*, 590), which as compared with Rose v. Rose, 4 *Abb. Ct. App. Dec.* 108, explains an important distinction as to limitation upon or within a term of years.

· A society unincorporated at testator's death may nevertheless take if the gift to it is not one which could vest at his death, and it becomes incorporated with power to take, before the time of vesting arrives. Shipman v. Fanshaw, 15 *Abb. N. C.* 288.

As to what is a vested and what a contingent gift, see note in 18. *Abb. N. C.* 297.

A subsequent incorporation cannot give validity to a devise to an institution which was not incorporated and authorized to take at the time of vesting. White v. Howard, 46 *N. Y.* 144; aff'g 52 *Barb.* 294.

There is one exception, perhaps, to the rule that a trust for a charitable corporation yet to be formed is void, namely the case of a religious society formed under the general act of 1813, and perhaps the same reasoning which creates that exception may apply to other statutes. I am not aware, however, that this question has been raised under any will. In the case of the Church of Redemption v. Grace Church, 68 *N. Y.* 570, rev'g and modifying 6 *Hun*, 166, on other points, it was held that property, both real and personal can be held for the use of an unincorporated religious society without any restriction as to time, except that it should terminate upon the lawful incorporation into a religious society This is by virtue of section 4 of the act of 1813, and it may be made to appear by parol as well as by deed. Foote v. Bryant, 47 *N. Y.* 544; Church of Redemption v. Grace Church, 68 *N. Y.* 570, 583 ; s. p., Reformed Protestant Dutch Church v. Brown, 4 *Abb. Ct. App. Dec.* 31. Compare, Alexander Presb. Ch. v. Presbyterian Ch., 64 *N. Y.* 274; aff'g 46 *How. Pr.* 312.

In Colton v. Colton (*U. S. S. Ct.*, 1888), the language of the will to be construed was as follows : " I give and bequeath to my said wife [name], all of the estate, real and personal, of which I shall die seized, possessed or entitled to. I recommend to her the care and

protection of my mother and sister, and request her to make such gift and provision for them as in her judgment will be best."

*Held*, 1. That the word "request" imported a direction. 2. That the uncertainty as to amount did not prevent a trust arising for a reasonable support, and the mother and sister of the testator were entitled to a beneficial interest for life in the estate given to the wife sufficient for their suitable support having reference to the amount of the estate.

## II. *Cases on the validity of alternative clauses.*

In Riker v. St. Luke's Hospital, 35 *Hun*, 512, a clause in the will of Margaret Burr giving to charitable societies which must prove to have power to take whatever gifts to other societies might fail, with a request that the funds so given should be applied by the legatees pursuant to the defeated intention of the testator, was upheld.

The will of that case contained a devise to the executors in trust to convert real estate after the termination of a life estate. It also gave numerous pecuniary legacies, among which was a pecuniary legacy to St. Luke's Hospital. This was invalid because testatrix died in less than two months after executing the will, and the corporation being created under *L*. 1848, c. 319, was prohibited by section six from taking under such a will.

At the close the will contained the following clause:

"*Sixth.* All the rest, residue and remainder of my estate, real and personal, I devise and bequeath to the American Bible Society aforesaid, to the New York Hospital Society, to St. Luke's Hospital; to the Board of Missions of the Episcopal Church, for foreign missions, and to the Board of the same church for domestic missions, to be divided amongst them according to the amounts of their respective particular legacies above given, but with a power as to each of these residuary legatees to bestow any legacy which may come to them through any possible invalidity or lapse, to such purpose as shall seem to them to have been intended by me."

The supreme court in 35 *Hun*, 512, held that this clause was valid in favor of the societies who were capable of taking, and created no legal obligation upon them to carry out the desires of the testatrix in respect to St. Luke's Hospital, but this must be left to their sense of justice and right.

The will of Sarah Burr, a sister of Margaret, which was executed in 1866, contained numerous charitable legacies, followed by the following clause:

" *Seventh.* In case from any misnaming of the societies or institutions to which legacies are intended to be given as above expressed, or in case from want of corporate capacity to take and hold the sums expressed to be given, the said legacies as above expressed, or any of them, cannot take effect and be executed in manner above expressed, then as to such ineffectually intended gift or sum, I give such sum to my executors to be applied to the charitable uses or purposes as above indicated, in such manner as they shall be able, giving the same, however, to them absolutely, relying on their carrying out substantially my purposes."

This was followed by a residuary bequest [eighth] to specified societies.

A codicil, executed in 1869, which made additional charitable bequests to societies, contained a substantially similar provision.

A second codicil, executed in 1881, contained an analogous provision in the following language.

"If any of the legacies or bequests given by me in this codicil should, from any cause whatever, fail to take effect, I give and bequeath the amounts of such legacies or bequests so failing to take effect, unto my executors, who shall qualify, as joint tenants, absolutely, in full confidence that they, or the survivor, or the survivors of them, will dispose of such amounts as I would have desired myself to do."

BRADY, J., in delivering the opinion of the supreme court General Term, said : "The matter of the will of O'Hara (95 *N. Y.* 403), one of the cases upon which the appellant's counsel relies to destroy the gift to the executors, does not conflict with the rule declared herein. The decision in that case rests, as said by FINCH, J., on proof uncontradicted, that the testatrix made the residuary devise and bequest in its absolute and unconditional form in reliance upon a promise of the legatees to apply the fund faithfully and honorably to the charitable uses dictated by a letter of instructions. Here, there is, as already suggested, no promise, understanding or command, but a wish, desire or hope." The opinion is printed in full in Riker *v.* Cromwell, 7 *N. Y. State Rep.* 316, 317.