A testamentary guardian acting in good faith may change the domicile of the infant for its benefit.

2. SAME—DISTRIBUTION OF ESTATE.

　　Testator appointed his own mother, describing her as a resident of Connecticut, as a guardian for his infant child, and on the event of her death before him appointed his sisters as such guardians, representing them as residents of Connecticut. The grandmother, after living for a while in the state, returned to Connecticut with the infant and all her property, and remained there until the death of the infant. *Held*, that the infant died a resident of Connecticut, and that its statute of distribution governed the disposition of her estate.

3. ADMINISTRATION—FUNERAL CHARGES.

　　An undertaker's charge of $490 for a casket and box for an infant leaving an estate of $6,000 or $7,000 will be reduced to $175.

In the matter of the judicial settlement of the account of John Kiernan, administrator of Jane Kiernan. Decree rendered.

W. A. Fischer, for administrator.

John F. Couch, for contestants Robert Kiernan, Rose Ross, Nellie McGill, and Eulalia Holmes.

Rabe & Keller, for National Casket Co.

Charles O. Grim, for New York & Brooklyn Casket Co.

Charles Y. Van Doren, special guardian.

CHURCH, S. Upon the settlement of this account there arises a dispute as to whether the domicile of the deceased is in the state of Connecticut or New York, as, the statutes of distribution being different in the different states, it makes a difference as to who will be entitled to inherit the estate.

The facts are as follows: Edward J. Kiernan, the father of this intestate, died at the city of Brooklyn in the year 1894, leaving a last will and testament, which was duly proved in the surrogate's court, Kings county. After making provisions for his estate being held by his executors in trust for his children, he nominated his mother, Rosanna Kiernan, a resident of New Haven, Conn., to be the testamentary guardian of such children. After the admission of the will of said Edward J. Kiernan, his mother duly qualified as testamentary guardian for his infant children under the will. She lived at Brooklyn for a short period of time, and endeavored to conduct the undertaking business which he had left to her. Subsequently, finding it unprofitable, she returned to New Haven, where she had always resided. Before she did so one of the children of Edward J. Kiernan died, and shortly afterward another died, leaving only Jane

¶ 1. See Guardian and Ward, vol. 25, Cent. Dig. § 114.

Kiernan, the deceased herein, surviving. When the guardian returned to New Haven she took with her Jane Kiernan, and all the personal property, clothing, and belongings of said Jane Kiernan, and said infant continued to reside with her until her death. It appears that occasional trips and visits were made to Brooklyn by said infant to visit her relations who were in this city, and that on one of said occasions she attended school here for a short period of time.

The question to be decided, therefore, from these facts, is whether the deceased's domicile, under these circumstances, became changed from New York state to Connecticut. In the consideration of this question, a few general principles are well established: First. The domicile of the infant, after the death of both parents, will be that of the last surviving parent. Kennedy v. Ryall, 67 N. Y. 379. Second. That the decedent, being non sui juris, could not change her own domicile. Ex parte Dawson, 3 Bradf. Sur. 130. Third. That, under all ordinary circumstances, the domicile of the guardian is the domicile of the infant ward.

The question whether a guardian, acting in good faith, has power to change the legal residence and domicile of an infant has been one about which there has been considerable dispute. It seems to me that we must recognize in this country that the writings and views of the earliest writers on this subject were written where the change of domicile from one country to another was different from one state to another of this Union, and hence that it is very reasonable and probable that the ancient writers should have been disinclined to consider that guardians had this power, as the consequences were vastly greater: but where the various states of this country are all one union, and the inhabitants of the various states are in fact one people, except that there may be differences as to matters of descent, and other more or less local regulations in the different states, it seems to me that a more liberal and general rule should be recognized, and that where a guardian in good faith, for the benefit of the ward or for other good purposes, should change from one state to another, it should be deemed that she has the power to change the domicile of the infant. The propriety of a more reasonable interpretation of this matter has been recognized by Chancellor Kent. Schouler, in his Domestic Relations (section 334), decides the same principle by stating:

"It would be unwise for American courts to apply, as between states united under one general government, the same rigidly exclusive doctrines which foreign countries, differing in religion, custom, and different institutions, may see fit to adopt in their intercourse with one another; for such change might be for the direct benefit of the ward's health, education, or personal surroundings, and the same guardian might procure a new appointment in the state of the new domicile."

The guardian who made the change in this case was the paternal grandmother of this infant. If she had not made the change, and the infant had died a resident of the state of New York, then, under the laws of this state, the property would have gone to the grand-

parents, who, as the paternal grandfather is dead, consist of the guardian and the maternal grandmother and grandfather. Under the laws of Connecticut, however, the right of the grandparents to inherit is not recognized, and consequently, if deceased's domicile is in Connecticut, then her aunts and uncles would inherit. The perfect good faith, therefore, of this guardian in making this change of domicile is demonstrated, as, if she did effectuate the same, she cut off any right which she might have had to share in the intestate's estate. In the case of Lamar v. Micou, 112 U. S. 452, 5 Sup. Ct. 221, 28 L. Ed. 751; Id., 114 U. S. 218, 5 Sup. Ct. 857, 29 L. Ed. 94,—in which a child was taken to the home of her paternal grandmother, who was the child's only next of kin, the court held that the grandparent was the "guardian by nature," and states as follows: "It is evident that the removal of the infants, after the death of both their parents, to the home of their grandmother in Georgia, was with Lamar's consent. Under the circumstances, there can be no doubt that by taking up their residence with her they acquired her domicile in that state." If a person who is the guardian by nature of an infant can establish the domicile of an infant, there certainly is no good reason why a person nominated by the infant's parents as testamentary guardian should not have the power to do so. One of the earliest cases in this state was that of Wood v. Wood, 5 Paige, 596, in which the question as to the power of a parent or guardian to change the residence of his children or wards from one state to another was discussed. The court in that case refused to sanction the change on the ground that it was not for the benefit and best interests of the infant, but in so doing they state as follows: "I have no doubt as to the right of a parent or guardian to change the residence of his infant children or wards from one state to another, provided such change of residence is made in good faith and with a view to their benefit."

But it seems to me this case can be decided on a broader ground, and that it is not necessary to have the question solely turn upon the power which a guardian possesses to change the domicile of a ward. The deceased father of this infant unquestionably could in his lifetime have changed his residence, and therefore have legally changed the residence of the infant. It seems to me that by his will, in which he appointed his mother, whom he recognized as being domiciled in New Haven, the testamentary guardian of this infant, he, in practically explicit terms, directed that this infant should be taken to New Haven, and therefore that its domicile should be changed, as, when he directed that his mother should be appointed guardian, he appreciated that she had been domiciled with her husband at New Haven, and that the most of her other children, including her daughters, resided there, and it was evidently his idea that his children would be taken charge of by his mother at the place of her domicile, and not the possibility or contingency of his mother coming to Brooklyn to attend to the same. That it was his idea that his children would be taken to New Haven is further evidenced by the clause in his will in which he provided that, in event of his mother not being alive at the time of his death, then cer-

tain of his sisters, whom he also described as living in New Haven, should act as guardian of his children.

A very similar case to the one under consideration is that of White v. Howard, 52 Barb. 294. In that case the testator died domiciled at New Haven, Conn. His property was to be held in trust by his executors for the benefit of his child, and by his will he named, as the guardian of his child, a lady residing in New York, and in the event of her death he named her successor, who was also a resident of New York. The child went to live with the guardian in New York, and died during minority, while attending school in Connecticut. In passing upon the question the court states as follows (page 318):

"I think the determination of the question as to the domicile of the testator's daughter at the time of her death does not depend upon the determination of any question as to her power while a minor and a ward, or the power of her guardian to choose or create a new or another domicile. It is manifest from the will that her father expected and intended that she should, upon and after his death, during her minority, reside in New York, under the care and protection of her guardian residing there. It is evident that the father intended by his will, upon and after his death, to change her domicile from Connecticut to New York."

The special guardian herein has also made objection to the bill which the administrator has paid for the funeral expenses of this infant. The undertaker was the uncle of this infant, and was subsequently appointed administrator, who has presented this account for settlement. Under the direction of his mother (the guardian of said infant), he attended to all the necessities of the funeral. It is apparent that this bill is manifestly excessive. The undertaker admitted that the casket which was furnished was a very expensive casket; in fact, that in his entire practice as an undertaker he had never furnished so expensive a casket, although he knew of other caskets which had been furnished funerals which cost more. To permit a bill of this kind to be incurred for a child, who naturally did not have a large circle of acquaintances, and leaving but a small estate of some $6,000 or $7,000, is manifestly improper. The items of $450, contained in said undertaker's bill, for an "extra casket," and also of $40 for the "extra chestnut box," are disallowed. One hundred and fifty dollars would have procured a suitable casket, and $25 would have procured a suitable box, and the administrator should therefore be surcharged with the difference in these amounts.

Let a decree be presented for settlement in accordance with the terms of this opinion. Decreed accordingly.