J. P. FOLEY, Appellee, v. J. C. BROCKSMIT, Administrator of the Estate of Edward Lynch, Deceased, Appellant.

Action to Recover on An Undertaker's Bill; EXCESSIVE ALLOW-
ANCE.   Deceased had no relatives in the city where he
lived; was by occupation a janitor, and left an estate of
about $5,000; *held*, that a verdict for $455 on the b ll of the
undertaker for $526 was excessive, in view of the estate and
station in life of deceased.

*Appeal from Lynn District Court.*—HON. WM. G. THOMP-
SON, Judge.

WEDNESDAY, FEBRUARY 4, 1903.

PROCEEDING to establish a claim for funeral expenses attending the burial of Edward Lynch, deceased.   The administrator pleaded that the expenses were extravagant and foolish, considering the condition of the decedent's estate and his social standing and station in life.   Trial was had to a jury, resulting in a verdict and judgment for plaintiff in the sum of $455.   The administrator appeals. —*Reversed.*

*Smith & Smith* for appellant.

*H. M. Troy* and *Redmond & Stewart* for appellee.

DEEMER, J.—Edmond Lynch was about eighty years of age at the time of his death.   He had for a number of years been a janitor in the general offices of the Burling-ton, Cedar Rapids & Northern Railroad Company at Cedar Rapids.   He had no relatives in that city, and boarded with a Mrs. Weir, who received her pay from the paymaster of the railroad company.   His associates were generally labor-ing men, and his most intimate friend was a street sweeper.

He left an estate valued at not exceeding $5,000. When he died, plaintiff received a call to go to the place where the body was lying, and to take charge of the remains. He embalmed the body, dressed it, furnished the casket, hearse, five carriages, chairs, etc., for the funeral, and presented the following bill to the administrator for payment:

| | | | | |
|---|---|---|---|---|
| Oct. 31. | To washing and embalming body | $ 25 | 00 |
| Oct. 31. | Shaving | 5 | 00 |
| Oct. 31. | Burial robe | 20 | 00 |
| Oct. 31. | Burial slippers | 3 | 50 |
| Nov. 1. | Casket | 425 | 00 |
| Nov. 2. | Use of candelabra | 5 | 00 |
| Nov. 2. | Chairs and candles | 2 | 50 |
| Nov. 2. | Hearse | 10 | 00 |
| Nov. 2. | Wagonette | 4 | 00 |
| Nov. 2. | 2 landaus, at $4.00 | 8 | 00 |
| Nov. 2. | 2 three-seated carriages, at $4.00 | 8 | 00 |
| Nov. 2. | Personal services rendered | 10 | 00 |

$526  00

Payment was refused, and this action followed. The trial court instructed: "(3) You are instructed that the estate of deceased is liable for all reasonable and proper expenses necessary for decent interment of the deceased, and suitable for the station in life of deceased. Now, in this case you will satisfy yourselves from the evidence whether the items of charge are reasonable, and in conformity with the station in life of deceased, or otherwise; and if, from the evidence, you find that any of the charges in the account are not reasonable as necessary expenses attending the decent interment of deceased as funeral expenses, you will disallow the same, and allow plaintiff only what the evidence satisfies you the same are reasonably worth."

Defendant contends that the verdict is contrary to these instructions, and entirely without support in the evidence. The law with reference to such matters is well settled, and generally understood. Such charges are not,

strictly speaking, debts due from the deceased, but charges which the law out of decency imposes upon his estate. And, so far as these are reasonable in amount, they take legal priority of all such debts; as, likewise, do the administration charges. A decent burial should comport with the social condition of the deceased and the amount of his fortune. Justice to creditors, as well as to one's surviving family, demands, however, that there should be no extravagant outlay to their prejudice. If due regard to the character and social or public standing of the deceased requires a more costly funeral, public or private liberality should defray the additional cost. "Foolish and extravagant funerals, ordered by those not immediately concerned in the estate, are not to bind the representative and the immediate family of the deceased." Schouler, Executors (2d Ed.) section 421. Of course, one who furnishes reasonable burial equipment should be allowed the value thereof from the estate of the deceased, although it was not ordered by the administrator, or authorized by him. But whatever is furnished should reasonably comport with the station in life of the deceased and the amount of his property. The privilege thus granted should not be construed into a license to plunder the estate.

Lynch was a Catholic, and his burial was in accord with the customs and rites of that denomination. This was, of course, perfectly legitimate; but it is not shown, nor will we infer, that such customs call for gold trimmings or silk and satin linings of the casket. Our observation has led us to believe that this Christain denomination requires no more expensive funeral corteges for its members than any other. Surely, one may die in this faith without being troubled by visions of the undertaker plundering his estate. Seriously, the matter of a man's faith has little to do with the expenses of his funeral. It may, of course, call for some additional properties, which the law, out of regard for its policy of religious freedom, will

consider as necessaries. But the mere religious faith of one deceased adds nothing to the value of what is or should be furnished. We may quite readily agree that all the items mentioned in the bill were of such a character that they should have been furnished without being bound to accept the prices affixed as reasonable. That is to say, the deceased needed embalming, he needed proper clothing for burial, candelabra, chairs, candles, carriages, and proper services. But his burial robe need not be of satin, nor his casket metallic. The only evidence from plaintiff as to the value of the items furnished was, "They are all reasonable." He admitted on cross-examination that he never heard of a more expensive robe than the one he furnished; that he never put as good a robe as this one on a corpse before or since; that he had sold caskets from $6 up to $200 and $250, and that he had never before or since sold one for $425; that the casket he furnished was made of oak, broadcloth, and glass, and covered with broadcloth, and that it was trimmed with what is known as silver and gold plated trimmings. It was shown in the evidence introduced by defendant that the customary price for the use of a hearse was $5; that plaintiff paid but $3 apiece for the landaus, $3 each for the carriages, $3 for the wagonette, and borrowed the candelabra, for the use of which he paid nothing. It was also shown that the usual price for embalming was $10, that the usual price of a casket for such cases was from $40 to $60; that $5 would buy a very nice robe, and that there was no charge for personal services when the body was embalmed. It was also shown that $40 or $50 is the medium price for a casket. The testimony leaves no doubt in our minds that plaintiff gave Lynch the best he had, without any regard for expense, thinking, perhaps, that, as there were no known relatives, there would be no one to object. He furnished the most expensive materials, and provided such a casket as he had never sold "before or since." Manifestly, this

does not comport with a modest estate of less than $5,000, nor with the station the deceased had in business or society. The mere statement of the case condemns the claims more efficiently than any argument we can make.

But it is said that plaintiff testified that the prices were reasonable, and the jury was justified in believing him; and it is also argued that the whole matter was for the jury in any event. Suffice it to say that neither court nor jury is bound by a witness' estimate as to values, and, while the issue presented in this case is ordinarily for the jury, the case may be so plain that it is the duty of the court to interfere. That is the situation here. The idea that a man dying leaving an estate of less than $5,000 should have a casket costing $425, and that his estate should be burdened with funeral expenses amounting to $526, is little short of ridiculous. Courts will not permit such an injustice no matter what the finding of the jury. The case is reversed, and remanded for a new trial, or, at plaintiff's option, he may have judgment in this court for the sum of $150. This option is to be exercised within thirty days from the filing of this opinion. Plaintiff will, in any event, pay the costs of this appeal.—REVERSED.