Sloane, J.
Heard on. exceptions to partial account of A. C. Close, adminisitnator.
*460 This is in some respects an unusual case, in that the administrator of this estate made the arrangements for the funeral of the deceased and ordered the casket. Ordinarily the immediate duty — to quote from Redfield, Surrogate Practice — of burying the body rests upon the husband or wife or other relation of the decedent, or may resit upon a stranger, under whose roof the death may have occurred. He can not keep the body unburied or, by exposing it to violations, offend the feelings or endanger the health of the living. But, by whomsoever the duty is performed, the estate of the deceased is ultimately liable to defray the necessary, reasonable expenses of the burial. It is analogous to the duty and obligation of a father to furnish necessaries to a child, and of -a husband to a wife, from which the law implies a promise to pay him who does what the father or husband in that respect omits to do. It is not usual, and in moat cases if is not possible, for letters either testamentary or of administration upon the estate to be applied for and granted before the funeral of the decedent. So that the executor or administrator, as such, is very rarely called upon to superintend the funeral ceremony, or direct the necessary expenditure of money.
It seems to be settled that the reasonable and necessary expenses of -interring the dead body of a decedent are a charge against his estate though not strictly a debt due from him, so that his personal -representative may be sued as such for this recovery, but such claims should be presented for .their allowance or rejection the same as any other claim.
Under our statutes the administrator may pay proper and reasonable funeral expenses, but note that the word “reasonable” is always used in qualifying the authority of the administrator. Roekel, 649-1.
The first in order of payment are funeral expenses, those of last sickness, -and expenses of administration. These, are -each entitled in a like degree to be first paid, although in some states they come in a different order. In this action the first of these three will be discussed. The administrator is entitled to credit for all moneys properly expended for the funeral expenses of the deceased, but not if they were reimbursed from another source. He may pay proper and reasonable funeral expenses *461 without the claim being first allowed by the court against the estate, because it is of necessity to secure an early burial of the deceased. The widow is' entitled to be reimbursed for money advanced to pay such expenses, even though she at .the tóme declared that she will make no claim on the estate. A friend, however, voluntarily rendering aid, is not entitled to pay — such as searching for the remains of the deceased; writing and sending advertisements to the newspapers regarding the funeral; requesting a clergyman to perform the burial services; placing the corpse in his own house and permitting the funeral services to be held there. Rockel, 649-2.
But -it has been held that the administrator, if he order the services, is personally liable. This is especially true if he have plenty of .assets and refuse or fail to pay the expenses. Mourning apparel for the family is not a proper charge. But carriage hire in cities and towns to carry the family and friends to the place of interment are proper charges, although not from one town to another and back. Reasonable expenses for talring up the body and removing it to another place, if the first place is found improper, are allowable, but not if the first place of burial was proper. The expense of communicating the news of the death of the deceased to his family is a reasonable charge, and also the expense of the widow and heirs traveling to see him at his request, though they did not reach’ him till after his death. So the .expense of bringing the body home when death occurs abroad, and a person to accompany and care for it. Rockel, 650-1.
A number of circumstances enter into the question as to what will constitute a proper allowance for funeral expenses — thus, whether the estate will be solvent or insolvent, whether a person be high or low in society, as well as religious faith, fraternal ideas and family connection. It has never been questioned that the funeral expenses are to be restricted to the .amount necessary to bury the decedent in the style usually adopted for persons of the like rank and condition of society.
- In early times a stricter rule was followed as to solvent estates .than at this date. Courts have constantly inclined in a liberal discretion in this matter until now there is a very little difference, where the expenditure has not been extraordinarily *462 great in amount, considering all the circumstances, between a solvent 'and insolvent estate.
“The circumstances determining whait is reasonable in such oases,” says Woerner, “are numerous, and the degree of importance attached to each is incapable of exact measurement, impressing themselves more or less strongly on different minds. Public opinion and general expectations', fashion, the feelings of friends and neighbors, the age, standing, property, and habits of life of the decedent, as well as the standing and rank in society of the surviving family must .all be considered.
But large expenditures for burials, disproportioned to the assets of .an estate, should not be encouraged.
Says Brewster, J.:
“The assets of an estate should not be squandered in ostentatious displays for the gratification of the weakest of all vanities." Bradley’s Estate, 11 Phila., 87; Woerner, Administration, 764; Schouler, 421; Rooney, Ex parte, 3 Redf., 15.
Burial expenses amounting ¡to $27 ¡are not unreasonable where the decedent left an estate of $800. Kittle v. Huntley, 67 Hun., 617.
The following, from Woerner has often vividly presented itself to persons who have had experience in dealing with estates-of decedents:'
“If the greater economy were insisted on, in small as well as great estates, many a widow and heir struggling under the privation of bitter poverty would have reason-to be thankful for being prevented from wasting a substantial part of their means upon the fruitless pomp and ¡ceremony of an extravagantly'costly funeral.”
Foolish and extravagent funerals by' those not immediately concerned in the estate will not bind the .administrator or executor and the immediate family of the estate.
In determining what is reasonable, an undertaker is chargeable with only such knowledge as -to the decedent’s property, etc., as. is apparent upon reasonable observation, and is entitled to payment of his demand in full, if in accordance with decedent’s apparent condition, although the estate prove insolvent. However, undertakers should be held .strictly accountable *463 in this matter and not allowed to present a bill, which their knowledge of the affairs of the decedent should have informed them was greater than in justice to all should be expended, even though the family insisted upon such expenditure. Rockel, 650-3.
The standard of reasonable burial expenses is established by local and contemporary usage; for religious and humane sentiment carries the cost far beyond what mere sanitary rules might prescribe, and that' sentiment should not be outraged.
The religious persuasion of the deceased, or perhaps of his immediate family, may be fairly considered in determining the character and terms of costs in -the funeral; thus, Jewish, Christian und Pagan usages differ on these points; likewise Catholic and Protestant; nor do all Protestant sects agree among themselves. National habits, land those of one’s birthplace besides, deserve consideration, whatever be the last domicile.
The standard varies essentially, however, with the age and locality; as between city and country or polished and simple communities, and, in general, according to the testator’s station in life — all this aiding, doubtless; in fixing a scale of price which, even in such simple terms as the cost of a coffin, may vary greatly. Sehouler, Executors and' Administrators, 421-.
I do not think that any statements alleged to have been made by John Kaercher in his lifetime' should in any way have influenced the administrator in ordering -the casket and other articles enumerated in the account of the undertaker. A man can only speak after his death by his will, .and I presume that anyone could require in his will that any amount, no matter how extravagant or if it used up the entire estate, should be spent on his funeral..
The fact that his wife had a certain style of funeral should have no influence,,for John Kaercher in his lifetime could spend what he wished of his estate in -the burial of his wife, but after his death the expense of his funeral becomes a debt not against him but against his estate, and is subject to all the limitations which the law may impose.
An administrator can mat give away any portion of an estate, any more than a guardian or trustee could; he is bound down *464 by the law, and if he is ignorant of what his powers are he may miake himself personally liable.
There is something in the testimony as to what were the wishes of the Odd Fellows as to this funeral, and several gentlemen belonging to this order were invited by the 'administrator to take part in ordering the casket, etc. This desire on their part to have their brother Odd Fellow buried in the best style possible was commendable, but unfortunately under the law their wishes could not be carried out, for the administrator was bound to treat this ease the same as any other.
Some testimony was offered as to statements made by Miss Kate Kroll in relation to what she thought ought to be spent on .the funeral. These statements are denied by Miss Kroll, who .testified that she told the undertaker that he was the one to .arrange the funeral and was responsible for it. But she testified that she did say to him, that she was not willing to have so elabórate a casket. Now, in my judgment, whatever she might have said should not have carried any weight as far as the administrator was concerned, since he knew, or should have known, that he was the person alone responsible -to the court.
John Kaercher, as we know, was a hard-working, frugal and industrious man. He was modest, simple in his tastes, and if this should have had any weight in determining what amount should have been spent, it would certainly have indicated to the administrator a simple and unostentatious funeral.
Both the undertaker and the administrator knew .the deceased, and his circumstances and station .in life. Even if he had a family and they had consented to .an extravagant exT penditure it would not matter (Schouler, Excrs. and Admrs., 421). There must be no extravagance (Woerner, Administration, 764; 3 Redfield, Wills, 15; Kittle v. Huntley, 67 Hun., 617). Neither was the amount of .the undertaker’s bill for the funeral of the wife of the deceased many years ago material. The decedent had the right .to spend his own money as he pleased. Besides Miss Kroll denies that she consented to a funeral of over $60 "or $90. It was not necessary, .that the .administrator consult her. He had the power and if he obeyed the law her consent could not matter. The fact that the deceased had ex *465 pressed a desire for a simple funeral could.not matter. If he had .any instructions to leave, he made .a will and could have expressed his wishes therein.
•In this ease a funeral charge was made of $201. There are a great many eases in la,w • on this subject. The general rule is laid dowü by Rockel, Probate Practice, 649, notes 16 ‘and 20. The general rule is, that the expense of a funeral must be reasonable .and in accordance w-iith the size of the estate and the station of the deceased in life. Redfield, Surrogate Practice, 457.
In this ease the amount in the administrator’s hands for distribution is $798.32, and the question presented is, whether the undertaker’s bill of $201 is reasonable? It does not matter under the law where the estate is to go. It is the duty of the court to protect the estate; neither does the fact that the sole legatee, Miss Katherine Kroll,-may have consented to this expenditure seem of any importance. Under the rule, if the allowance is extravagant, her consent could not matter, and especially so in view of the fact that an administrator had been appointed, who alone had power to hind the estate. The administrator had been a clerk of the probate court, and was familiar with its practice, and either knew or could easily have learned what the amount of the estate was. The matter of local usage somewhat affects the question of what is reasonable.
Now as to the bill of the undertaker, I .find no fault with the charge for oaring for the body — washing, dressing and shaving. You must remember that this was a case of suicide, by the talcing of carbolic 'acid, and the body was not discovered until some time after death — almost eight hours, I believe, according to the testimony. And from the testimony of the undertaker, who was a graduate in his profession, .and a man of large experience and undoubtedly knew as much about the condition of the body when found .as anyone could, I do not believe that for the handling of such a body and embalming of same and the other attentions given it, a charge of $25° was out of the way. The expenses of the cemetery, $4 for the grave, I understand, is the usual charge,
The carriage an.d coach hire for the Relatives and friends and *466 ■pallbearers was not too great under prevailing charges for such services.
The charge of two dollars for shirt, collar, necktie and cuff buttons wias the ¡actual cost of these anticles and the same were necessary for the dressing of the body. And the man, it seemed, had nothing of the sort on hand at -the time of his death.
Now as to the ¡bill for the casket, I do not know that the charge of $150 for the casket furnished was- above the usual charge for such a casket, but in my judgment it was entirely too expensive >a casket for a man who had died leaving an estate of only $800. And I will, therefore, cut .the bill down to the extent of $50. While, as I said before, I do not ¡believe that an expression on the part of Miss Kroll should have had any influence with the .administrator, still it was brought out in the testimony that perhaps she did say she was willing to have a casket costing from $60 to $90, and this miay have influenced him to some extent.
There is one ease, Foley v. Brocksrmit, 119 Iowa, 457, which seems to be directly in point. This was a case where a man .who had no relatives in the city where he lived, and who was by occupation a janitor, left an estate of about $5,000. Held: That a verdict .of $425 on -the bill of the undertaker, for $526, was excessive in view of the station in life of .the deceased.
•Deemer, J., in writing the opinion of the case, said that the associates were generally laboring men, and his most intimate friend was a street sweeper. lie left an estate valued at not exceeding $5,000. The undertaker went to the place where the body, was lying; took charge of the remains, ¡and rendered an aoaount of $526. Payment was refused, and an .action followed. The trial court charged:
“You are instructed that ¡the estate of the deceased is liable for all expenses necessary for decent interment of the deceased and suitable for the station of life of the deceased. Now, in this case you will satisfy yourselves from the evidence whether the items charged ¡are reasonable,„and in conformity with the station in life of the deceased, or otherwise, and if, from the evidence, you find that any of the charges in the account are not reasonable as necessary expenses attending the decent interment of de^ ceased as funeral expenses, you will disallow the same, and allow' *467 plaintiff only what the evidence satisfied you the same are reasonably worth. ’ ’
.A decent burial should comport with .the social condition of the deceased and the amount of his fortune. Justice to creditors as well as to one’s surviving family, demands, however, that there shall be no extravagant outlay to their prejudice.
He furnished the most expensive materials, and provided such a casket as he had never “sold” before or since. Manifestly, this does not comport with a modest estate of less than $5,000, nor with the station the deceased had in business or society. The mere statement of the case condemns the claims more efficiently than any argument we can make.
But it is said that plaintiff testified .that the prices were reasonable, and the jury was justified in believing him; and it is also argued that the whole matter was for the jury in any event. Suffice it to say that neither court nor jury is bound by a witness’ estimate as to values, and, while the issue presented in this case is ordinarily for the jury, the case.may be so plain that it is the duty of the court to interfere. That is the situation here. The idea that a. man dying leaving an estate of less than $5,000 should have a casket costing $425, and that his estate should be burdened'with funeral expenses amounting to $526, is little short of ridiculous. Courts will not permit such ■an 'injustice, no matter what the finding of the jury. The case is reversed, and remanded for a new trial, or, at plaintiff’s option, he may have “judgment in this court for the sum of $150. This option is to be exercised within thirty days from the filing of this opinion. Plaintiff will, in any event, pay the costs of this appeal.”
In the ease cited the bill was for $150 out of an estate amounting to $5,000.
In the ease under consideration, it represented over one-quarter of the estate.