Filed 12/1/15  Safina v. Sorensen CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| WILLIAM SAFINA,<br><br>  Plaintiff and Appellant,<br><br>v.<br><br>LAWRENCE T. SORENSEN, as Trustee, etc.,<br><br>  Defendant and Respondent;<br><br>GERALDINE FREEMAN,<br><br>  Real Party in Interest and Respondent. | 2d Civil No. B259237<br>(Super. Ct. No. 1403000)<br>(Santa Barbara County) |

Michael Safina died.  At the time of his death he was in a 48-year relationship with Geraldine Freeman whom he considered his wife in all but name. Two years after his burial, his surviving brother, William Safina,[1] placed a headstone on the grave bearing the inscription "BELOVED BROTHER."  Freeman had requested the inscription "OUR BELOVED MIKE."  Unable to obtain an agreement on the inscription, Lawrence T. Sorensen, the trustee of Michael's trust, proposed that the headstone simply bear Michael's name along with the dates of his

---

[1] To avoid confusion, we shall refer to Michael Safina and his siblings by their first names.

birth and death.  William, with whom Michael and Freeman had a contentious relationship, refused.  Sorensen petitioned for an instruction to allow the modification.  William objected, contending that Health and Safety Code section 7100[2] controlled and gave him the power to make the decision.  We affirm the trial court's order granting Sorensen's request.

FACTS AND PROCEDURAL BACKGROUND

Michael died on April 4, 2012.  At that time, he had three living siblings, William, Abraham Safina and Bertha Berston.  He had no surviving spouse, children or parents.

Prior to his death, Michael amended his trust to disinherit William and Abraham and to name Freeman as the sole remainder beneficiary.  William and Abraham filed a trust contest action to invalidate the amendment, among other things.  That petition is pending along with four other actions involving Michael's estate.  Sorensen is the temporary trustee of Michael's trust and the special executor of his estate.

Michael was interred at Santa Barbara Cemetery.  Consistent with Jewish custom, William and Abraham planned to place a headstone on Michael's grave a year after his death.  They proposed to include the inscription "Our Beloved Brother," but Freeman wanted "Our Beloved Mike."  Before an accord could be reached, Abraham died.

Nearly two years after Michael's death, Sorensen sent an email to William's counsel, with Freeman's approval, proposing that they erect a headstone simply bearing Michael's name and the dates of birth and death.  The next day, William unilaterally placed a headstone on the grave that included that information plus the inscription "BELOVED BROTHER" and a Masonic symbol.  According to William, all three brothers were freemasons.  Freeman, who visits the grave daily, objected to the stone.  She claimed the inscription is an affront to her long-term

---

[2] All statutory references are to the Health & Safety Code unless otherwise stated.

2

relationship with Michael, infringes on her rights as holder of his health care power of attorney and is contrary to the brothers' actual relationship.

Sorensen again proposed to place "neutral" wording on the headstone, with the cost to be absorbed by the trust. William refused. He stated Abraham had wanted the "BELOVED BROTHER" language and he was honoring that request. To resolve the impasse, Sorensen petitioned the probate court for an instruction allowing him as trustee to modify the headstone to delete the inscription and Masonic symbol.[3] Freeman joined in the petition.

The parties disputed who had the right to dictate the content of the headstone. William claimed the right under section 7100 as Michael's surviving brother. Freeman claimed a higher priority right as the agent under a power of attorney Michael had signed related to his health care. William maintained that the inscription was made at Abraham's request. The probate court found that it was not "Abe's interests that would be the controlling interest here. It would be Michael. And all evidence is that Michael was somewhat at odds with his brothers at the time he passed away." The court ordered that "[t]he headstone . . . be changed to the headstone proposed by Mr. Sorensen. Michael Safina's Trust shall pay the cost."

William moved to vacate the probate court's order. He argued that Freeman's power of attorney for health care was invalid because it was not notarized or witnessed and that only he, as the "'sole surviving competent adult sibling of decedent,'" had statutory authority to direct the content of Michael's headstone. (See § 7100, subd. (a)(5).) The court declined to change its ruling. Agreeing with Freeman's analysis, the court noted "this sort of situation is so unfortunate, and I believe it's the kind of situation that calls out for an equitable solution, and I think that's what I've done." William appeals.

---

[3] Photographs of the current and proposed headstones are attached as Appendix A.

3

## DISCUSSION

### *Standard of Review*

An order on a petition for instructions is reviewed for an abuse of discretion. (*Estate of Denton* (1971) 17 Cal.App.3d 1070, 1075.) "The trial court's exercise of that discretion will be upheld if it is based on a reasoned judgment and complies with legal principles and policies appropriate to the case before the court. [Citation.] A reviewing court may not disturb the exercise of discretion by a trial court in the absence of a clear abuse thereof appearing in the record. [Citation.] The burden rests on the complaining party to demonstrate from the record that such an abuse has occurred. [Citation.]" (*Forthmann v. Boyer* (2002) 97 Cal.App.4th 977, 984-985.)

### *Application of Section 7100*

Section 7100 "establishes . . . an orderly process by which to ensure that proper disposition is made of human remains." (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 896-897.) The statute, which is strictly construed, sets forth a hierarchy, in descending order, of nine categories of persons authorized to control the disposition of the remains. (§ 7100; *Benbough Mortuary v. Barney* (1961) 196 Cal.App.2d.Supp. 861, 865.) The first and highest category is the holder of a power of attorney for health care. (§ 7100, subd. (a)(1).) This category is inapplicable here because Freeman's power of attorney for Michael's health care was not notarized or witnessed in accordance with the Probate Code. (See Prob. Code, § 4673, subd. (a)(3).) The second, third and fourth categories also are inapplicable. The fifth category, and the one relied upon by William, is "[t]he sole surviving competent adult sibling of the decedent or, if there is more than one surviving competent adult sibling of the decedent, the majority of the surviving competent adult siblings." (§ 7100, subd. (a)(5).) That provision further states that "less than the majority of the surviving competent adult siblings shall be vested with the rights and duties of this section if they have used reasonable efforts to notify all other surviving competent adult siblings of their instructions and are not aware of any

4

opposition to those instructions by the majority of all surviving competent adult siblings." (*Ibid.*)

William contends that he, and only he, had the statutory authority to decide the content of Michael's headstone. The flaw in his argument is that he is not, as he originally claimed, "[t]he sole surviving competent adult sibling of the decedent." (§ 7100, subd. (a)(5).) As stated in Sorensen's petition, there were three surviving siblings at the time of Michael's of death. By the time William commissioned the headstone, Abraham had died and there were two surviving siblings – William and Bertha. Section 7100, subdivision (a)(5) states that where, as here, there is more than one surviving competent adult sibling, the majority of the surviving competent siblings must agree on the disposition of the remains, which includes "the location and conditions of interment, arrangements for funeral goods and services to be provided." (*Id.*, subd. (a).) Assuming this language encompasses the selection of a headstone two years after the decedent's burial, nothing in the record relating to the petition suggests William obtained Bertha's agreement to the inscription or that he "used reasonable efforts to notify" her of his intention, as required by section 7100, subdivision (a)(5).

Indeed, after William moved to vacate the probate court's order, Bertha submitted a declaration stating that she had "received a copy of the Trustee's Motion for Instructions Regarding the Headstone to place neutral language on my brother, Mike Safina's headstone, which I understand was granted by the Court, *and which I fully support.*" (Italics added.) William objected to the declaration as untimely, but he can hardly complain about a declaration that was filed in direct response to his assertion that he is "'sole surviving competent adult sibling of decedent.'" Not only does the declaration refute that statement, but it also supports the probate court's implied finding that there was no agreement by a majority of the surviving siblings to erect the current headstone. Thus, on the record presented, William has not shown that his decision to choose the content of the headstone was authorized under section 7100, subdivision (a)(5).

5

Further, it is not clear that section 7100 applies to the facts of this case. The decision to commission the headstone was made almost two years after Michael was interred. Section 7100, subdivision (a) states that disposition of the remains includes "the location and conditions of interment, and arrangements for funeral goods and services to be provided . . . ." William cites no authority suggesting that erecting a headstone a significant period of time after the decedent's burial is part of a condition of interment or an arrangement for funeral goods. In fact, in his response to Sorensen's petition, William asserted just the opposite. He opined that even if Freeman's health care power of attorney was valid, her argument that "[s]ection 7100 give[s] its holder authority over the headstone inscription at this late date requires stretching the meaning of the statute far beyond its plain words. . . . Disposition of the remains of a deceased person can only mean deciding how that person should be buried. Here, [Michael] was buried over two years ago . . . ." (See, e.g., *Maffei v. Woodland Memorial Park* (2005) 130 Cal.App.4th 119, 129 [section 7100 establishes precedence in determining initial disposition of remains].)

In the absence of clear governing authority on the issue, Sorensen appropriately petitioned the probate court for an instruction regarding the headstone's content. The probate court, as a court of general jurisdiction, enjoys "broad equitable powers" to decide such matters. (*Estate of Kraus* (2010) 184 Cal.App.4th 103, 114 ["The probate court may apply general equitable principles in fashioning remedies and granting relief"]; see *In re Malgor's Estate* (1947) 77 Cal.App.2d 535, 536-538; *In re Seymour* (1911) 15 Cal.App. 287, 293-294 [executors petitioned for instructions to purchase decedent's final resting place].) Here, the court was faced with a disagreement between Michael's long-time companion, who is the beneficiary of his trust, and his remaining brother, with whom he had a troubled relationship. Sorensen proposed, as a reasonable compromise, that the headstone be modified at trust expense to delete the contested inscription and symbol. The remaining content is "neutral," favoring neither party,

6

and was endorsed not only by Freeman, but also by Michael's other remaining sibling. William has not shown that the court's adoption of this compromise was arbitrary or unreasonable under the circumstances.

DISPOSITION

The judgment (order granting trustee's petition for instructions) is affirmed. Respondent Freeman shall recover her costs on appeal.

<u>NOT TO BE PUBLISHED.</u>

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

7





**APPENDIX A**

Colleen K. Sterne, Judge

Superior Court County of Santa Barbara
_____

Allen & Kimbell, LLP, John H. Parke, James M. Sweeney for Plaintiff and Appellant.

No appearance for Defendant and Respondent Lawrence T. Sorensen.

James P. Ballantine for Real Party in Interest and Respondent Geraldine L. Freeman.