## Ex Parte, Bartlett.

*In the matter of the Guardianship of* LUCY ISABELLA BART-
LETT.

WHERE the Surrogate of New-York appointed a guardian for a minor, residing in
   his county, and thereafter the residence of the minor was changed to the county
   of Kings, and the minor having attained the age of fourteen, desired the ap-
   pointment of a new guardian,—*Held,* that the Surrogate of the county of Kings
   had jurisdiction to make the appointment.
A domicil of choice can only be acquired by a person who is *sui juris,* and a minor
   cannot therefore of his own motion make a change of his domicil.
The guardian is an officer of the law, and he will not be allowed to employ his
   authority to the disadvantage of his ward. He ordinarily possesses the custody
   of the minor's person, and the right to select his habitation, but no greater
   effect will be given to his acts in these respects than the nature of the case
   reasonably requires; and although the act may be allowed and ratified, if judi-
   cious or necessary, its consequences should be limited so as not to affect the
   *status,* or the rights of the infant, or the succession to his property.
There would, however, appear to be no ground for denying such a control on the
   part of the guardian over the residence of the ward as shall not withdraw him
   from the jurisdiction of his domicil of origin. A change of residence from one
   portion of the same sovereignty to another, as from one county to another, is
   completely within the scope of the guardian's authority, as no rights are im-
   paired or affected, but there is simply a substitution of one local authority in
   the place of another, all under the same laws and jurisdiction.

   S. D. VAN SCHAICK, *for Petitioner.*

THE SURROGATE.—The minor, who is an orphan, was born in the City of New-York, and her parents resided here up to the time of their death. A guardian was appointed by me in February, 1853, who placed his ward under the care of a relative in the City of Brooklyn, where she has continued to reside up to the present period. The minor having attained the age of fourteen years, now desires to select a new guar-

dian. If her residence be considered as in this county, it becomes my duty to make the appointment; if in Kings county, the Surrogate of that county has jurisdiction. A domicil of choice can only be acquired by a person who is *sui juris*, and a minor cannot, therefore, of his own motion, make a change of his domicil. The power of a guardian to effect such a change has been extensively discussed by the civilians, but the point of difference between them relates more to such a change of domicil as may alter the minor's capacity to act, and the right of succession to his estate in case of death, than to a mere change of abode. In France, this disputation has been settled by a provision of the Code Civil, which places the domicil of the minor with his tutor. (*Art.* 108, *Duranton, liv.* 1, *tit.* *X.*, § 526; *Toullier, liv.* 1, *tit.* *X.*, § 1183.) Our statute is silent on the subject; and, in the absence of express legislation, the question must be considered upon reason and principle.

According to the Roman law, it was the office of the Prætor to determine the place of abode and education of the minor. (*Dig. lib.* 27, *tit.* *II.*, *Ubi pupillus educari vel morari debeat.*) This rule is analogous to the practice of the Court of Chancery in England, and in this State, in exercising supervision over the conduct of the guardian. On the dissolution of the parental authority by death, and the cessation of that control which flows from the laws of nature, the care of the child devolves upon the State. It is then delegated to a guardian who has the custody of the person of the minor and the charge of his property. But the guardian is a mere trustee, an officer deriving all his authority from his appointment, responsible, as in all other cases of trust, for the proper discharge of duty, and subject to the control and direction of the authorized tribunals. He will not be allowed to employ his power to the disadvantage of the ward, and there would seem to be no reason why he should possess any greater authority than is necessary for the due performance of his official trust. His functions should be measured by the nature and the necessities of the trust; and the relation be-

tween him and the ward being artificial and the creation of the law, no greater vigor should be given to his acts, and no other consequences be permitted to flow from them, than the reason of the case requires and the law sanctions, in view of the interests and welfare of the minor. No doubt, the duty of the guardian in respect to the health, moral training, education and maintenance of his ward, necessarily involves the selection of his habitation. But it does not follow that to a change of abode, made in reference to such objects, the law will attach the consequences flowing from a change of domicil in the case of an adult. In other words, it may be admitted that ordinarily the guardian possesses the custody of the minor's person, and the right to select his habitation; but still the question will remain, what effect will the law attribute to his acts in these respects? Does the guardian's authority, reposed in him by virtue of his office, embrace the selection of a domicil which shall alter the rights of succession, in case of the minor's decease, or which shall withdraw him from the protection of the very sovereignty which appointed the guardian. Is this a proper function of the office? Is this authority delegated by the State to the guardian? Is it demanded by any reason of necessity or utility, or is it a necessary incident to any of the essential duties of the guardian or rights of the ward? The power of the guardian, in respect to the property of the minor, has usually been restricted by the Court of Chancery, so that in changing personal property into real estate, or *vice versa,* the rights of the infant, or of his representatives, should he die under age, may not be impaired or injured. It has been customary, therefore, to treat lands purchased with personal estate as realty, and the proceeds of real estate sold, as personalty, in determining the course of inheritance and succession. (*Story Eq. Jur.* § 1357.) I can see no sound reason why the same rule should not be applied to the disposition of the custody of the person of the infant, that is applied to the disposition of his property; that is, to allow or ratify the act itself, if judicious or necessary, but to limit its consequences so as not

to affect the state or the rights of the infant or the succession to his property. I am aware that Chancellor Kent inclined to the opinion that the guardian had the right to shift the infant's domicil with his own, and that Chancellor Walworth admitted fully the power to change the infant's residence from one State to another, provided the act were done in good faith, and with a view to the ward's benefit, (2 *Kent's Com.*, vol. 2, *p.* 227, *note*; *Wood* vs. *Wood*, 5 *Paige, R.*, 605,) but the arguments of the foreign jurists, whose conclusions were favored by Chancellor Kent, are based mainly upon the assumption that the guardian represents the minor, and has the power to contract for him. (*Bynkershoek, Quæst. Priv. Juris., lib.* 1, *ch.* 16; *Rodenburgh, De Div. Stat. tit.* 2, *ch.* 1, § 6; *J. Voet, ad Pand. lib.* 5. *tit.* 1, § 100.) But does the guardian represent the minor, or has he power to contract for him, in an unlimited sense? If so, that settles the question; but if not, then the point remains, what are the limits of the right of representation and the power to contract. I have already seen that these are restrained in equity so as not to affect the rights of heirs and next of kin, and are measured substantially by the purposes and objects of the trust. There would seem, therefore, to be no reason why the power over the person of the minor should not likewise be so limited. The Continental authorities which take this side of the question, place it mainly on the ground that the purposes for which the guardian is clothed with the custody of the person of the infant, do not require a domicil in its proper sense; that relating simply to maintenance and education for a limited period, they are temporary, and only require a temporary home. Thus, Boullenois says, "the minor lives with his tutor, but he is not properly domiciliated with him; he sojourns, awaiting his majority." (*Obs.* 32.) Pothier says, "minors do not compose part of the family of their tutor, as children the family of their father; they are in the house of the tutor as in a strange mansion, *ad tempus*, for a time, while the tutelage lasts—consequently the domicil of their tutor is not their true domicil." (*Coutume D'Orleans, Int. n.* 17.) It seems to be

safer, in view of the interests of the minor, the claims of relatives who may possibly become entitled to the succession, and the care which should always be taken that a delegated authority should not be perverted or abused in derogation of the power which has conferred it, that the guardian should have no greater control over the person of his ward than is reasonably necessary for the proper discharge of his official functions. While, however, his right to change the domicil of the ward so as to alter the succession, may be doubted, for the reasons I have indicated, there would appear to be no ground for challenging such a control over the residence of the minor as shall not withdraw him from the jurisdiction of his domicil of origin. In the present instance, the residence of the infant has been changed from one county to another, but still has been retained under the sovereignty of the same laws. This, I have no doubt, is completely within the scope of the guardian's authority. No rights are impaired or affected by the act, the jurisdiction of the State is preserved, and no other consequence flows from the change of residence than the substitution of one officer in the place of another—a result entirely conformable to those purposes of convenience contemplated by the statute in regulating the appointment of a guardian by the Surrogate of the county where the infant resides. I therefore think, that in the present instance, the Surrogate of the county of Kings has a right to make the appointment—though it may be possible that the minor, in default of his exercising it, may resort to the forum of her domicil of origin.