T. Paul Kane, J.
This is a proceeding pursuant to article 78 of the Civil Practice Law and Rules to review a determination of the Acting Commissioner of Education rendering the petitioner herein liable for certain tuition payments to respondent, Lakeside School.
These payments concern Linda and Vivian Harving aged 18 and 15 respectively, who heretofore resided with their mother Calina (Harving) Lalvani and their stepfather Shersing J. Lalvani, their natural father being deceased, at 97 Cien Oaks Drive, Rye, New York. During this period both children attended the public schools in the City of Rye, New York.
. On July 21, 1959 the mother died and her last will and testament was duly admitted to probate on September 18,1959. Pursuant thereto she appointed one Hildegard Doris Becher guardian of the persons of her children and one Frank C. Wittenberg guardian of the property. The latter ultimately declined and renounced his appointment. It appears that the said Hildegard Doris Becher was a stranger to the family and not aware of her designation prior to the mother’s death. She did accept the appointment, however, and duly qualified. Letters of guardianship of both the person and property were issued to her on February 10, 1960. During this period and until August 31, 1960, both children resided with their stepfather at 97 Cien Oaks Drive, Rye, New York, and attended Rye public schools. It further appears that the stepfather received the social security payments provided for the support of said children.
During the month of August, 1960 arrangements were made to place both children in the Lakeside School at Spring Valley, New York, a respondent herein. This was done by the guardian appearing at the school in company with an uncle of the children and by the execution of the necessary agreements as to payments, medical expenses, etc. to properly enter the children in this school as boarding students. They entered the school on September 1, 1960 and remained there or under its educational supervision on an apparently 12-month basis. In May, 1963 the guardian resigned and said resignation was accepted in August, 1963. It appears that during the period of her guardianship the wards at no time were ever physically present at her residence, 1 Bellain Avenue, Town of Harrison, New York. These are the principal factual matters before the court as it understands them and any variances set forth in the moving papers do not appear to be substantial.
The issues involve a dispute as to which of two school districts is obligated to pay the tuitions of these children.
*983 Upon an appeal to the Commissioner of Education, the Commissioner resolved the question by holding that the Harrison School District was responsible for all tuition charges for the children at Lakeside School since the residence of the children became that of their guardian by operation of law upon her proper appointment and qualification. The guardian’s appointment and qualification occurring prior to the children’s entry into Lakeside School, it thus rendered Harrison responsible under subdivision 4 of section 3202 of the Education Law, it being their residence at the time immediately preceding their placement in the Lakeside School.
The petition herein on behalf of Harrison questions the validity of that determination and the subsequent refusal to reopen it as a prior decision. The Commissioner seeks to dismiss the petition on the merits but also questions the power of the court to review the decision of the Commissioner under section 310 of the Education Law.
Of primary concern to the court is a determination of the question of its power to review a decision of the Commissioner upon an appeal such as is presented herein. While section 310 of the Education Law states that decisions upon appeals to the Commissioner are “final and conclusive, and not subject to question or review in any place or court whatever,” courts have permitted review when the Commissioner’s determination was “ purely arbitrary ”. (Matter of Ross v. Wilson, 308 N. Y. 605, 608.) (Matter of Levitch v. Board of Educ., 243 N. Y. 373.)
In Matter of the Board of Educ. of the City of N. Y. v. Allen (6 N Y 2d 127, 136) the quoted words are clearly defined: “ The term ‘ arbitrary ’ standing by itself, would be quite sufficient to make it plain that only a narrow review of the Commissioner’s decisions is available in the courts. In the above-cited cases we undertook to emphasize the point by employing the phrase ‘ purely arbitrary ’. ’ ’
As chief administrative officer of our educational system, the Commissioner is necessarily vested with broad powers to review the acts or actions of other individuals or groups or boards. He may substitute his judgment for those whose action he is reviewing and it has been held “ This is the plain import of section 310.” (Matter of Board of Educ. of City of N. Y. v. Allen, supra, p. 141.) These principles seem well settled.
The present case presents a somewhat different and more significant problem. The decision herein certainly is not based purely on a matter of “ educational policy ”, nor is it solely the “interpretation or construction of a statute.” The entire *984 process places the Commissioner over the fringe of the area encompassing our “educational system” and into the determination of substantive rights that may establish rights and responsibilities of much greater significance than a liability for tuition payments. In any event it is this court’s opinion that under such circumstance any determination made “as a matter of law ” that affects substantial individual substantive rights, if erroneous, would and should be considered “ purely arbitrary ” and thus reviewable in the courts.
Addressing itself to the principal issue in controversy the court first considers the impact of the various statutory provisions. First, subdivision 4 of section 3202 of the Education Law provides in part as follows: “ the cost of the secular instruction of such children in the school or schools in the district shall be a charge upon and shall be paid by the school district responsible for their instruction at the time of their admittance to said duly incorporated orphan asylum or other institution for the care, custody and treatment of children.”
Therefore, it thus becomes necessary to determine the domicile of Linda Harving and Vivian Harving on September 1, 1960 in order to determine which school district is responsible for their tuition payments to Lakeside School. In this opinion residence is construed as meaning domicile.
The Commissioner read section 82 of the Domestic Relations Law as making the residence of the guardian the residence of the ward on the date the guardian was properly appointed. The court cannot accept this broad determination of the meaning of section 82 of the Domestic Relations Law, which reads in its entirety as follows: “ § 82. Powers and duties of such guardians. Every such disposition, from the time it takes effect, shall vest in the person to whom made, if he accepts the appointment, all the rights and powers, and subject him to all the duties and obligations of a guardian of such minor, and shall be valid and effectual against every other person claiming the custody and tuition of such minor, as guardian in socage or otherwise. He may take the custody and charge of the tuition of such minor, and may maintain all proper actions for the wrongful taking or detention of the minor, and shall recover damages in such actions for the benefit of his ward. He shall also take the custody and management of the personal estate of such minor and the profits of his real estate, during the time for which such disposition shall have been made, and may bring such actions in relation thereto as a guardian in socage might by law.”
It is interesting to note the use of the words “ shall ” and “may” in determining the powers and duties of a guardian. *985 Giving these words their usual meaning it appears from the statute that it is mandatory that a guardian be subject to statutory rights and powers that are valid against any other claiming custody. That it is permissive for a guardian to take actual custody of his wards and he may bring action to obtain custody if it be wrongfully withheld, and in such an event it is mandatory that he attempt to recover damages in any such proceeding for his ward’s benefit. It is also mandatory that he manage the affairs of his ward’s estate. This statutory language would seem to indicate that in order to effectuate a change of residence a guardian must perform some affirmative act to evidence personal control or physical custody of the ward.
“ It is a well-settled general rule that an infant’s domicil, upon the death of both parents, is ordinarily determined by the domicil at death of the last surviving parent, and remains the same until changed by operation of law or the proper act of a guardian.” (17 N. Y. Jur., Domicile and Residence, § 43.)
The authorities examined by the court discuss the powers of a guardian to change the domicile of a ward, and in some cases limit and restrict this power, but in each case where a change occurred, it resulted from an act evidencing an intent to make a change and an actual change of residence. (Matter of Kiernan, 38 Misc. 394; Lamar v. Micou, 112 U. S. 452; Matter of First Trust & Deposit Co. v. Goodrich, 3 N Y 2d 410; Matter of Bartlett, 4 Bradf. 221.)
The court therefore finds that there is nothing before it to indicate a change of domicile by any act of the guardian as it might affect the infants Linda and Vivian Harving. The determination of the Commissioner that the domicile changed by operation of law being erroneous, it follows that the infants’ domicile remained unchanged upon the death of their mother and during the period of the guardianship of Hildegard Doris Beeher; i.e., it remained at Rye, New York, during this entire period.
The court is advised that it should be reluctant to review a Commissioner’s interpretation when it is consistent with a long line of administrative decisions previously rendered. There is no doubt but that consistency in administrative decisions and interpretations of statutes is desirable, but if the initial premise is erroneous, that which so follows does not make consistency a virtue. In any event, the factual situation presented is not entirely like those to which reference has been made in respondent’s briefs.
Therefore, for the reasons stated, the court holds that .the Commissioner’s decision that the domicile of the infants Linda *986 and Vivian Harving changed by operation of law upon the appointment and qualification of their testamentary guardian to the residence of the guardian, was purely arbitrary.
Under those circumstances, the determinations of the Commissioner are vacated and annulled and the application of the petitioner is granted.